Filed 5/6/13

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RONALD JAY SISSON,<br><br>       Petitioner,<br><br>       v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>       Respondent;<br><br>---<br><br>BONNIE M. DUMANIS, as District Attorney, etc., et al.,<br><br>       Real Parties in Interest. | D063022<br><br>(San Diego County<br>Super. Ct. No. SCN259845) |


PROCEEDINGS in mandate following the partial denial of a motion for discovery of peace officer personnel information. Harry M. Elias, Judge. Petition granted in part and denied in part.

Mark W. Fredrick for Petitioner.

No appearance for Respondent.

Bonnie M. Dumanis, District Attorney, Laura Tanney, Gary Schons and Laurie Hauf, Deputy District Attorneys for Real Party in Interest Bonnie M. Dumanis.

Kamala D. Harris, Attorney General, Alicia M.B. Fowler, Senior Assistant Attorney General, Chris A. Knudsen and Evan R. Sorem, Deputy Attorneys General, for Real Party in Interest Department of Corrections and Rehabilitation.

Jones & Mayer and Gregory P. Palmer for Real Party in Interest Costa Mesa Police Department.

INTRODUCTION

In this petition, we must decide whether a criminal defendant charged with provocative act murder showed good cause for discovery of complaints of dishonesty, false reporting, and excessive force in peace officers' personnel records. We must also decide whether a trial court, when conducting an in camera review of such records, must examine the records itself or whether it may rely in whole or in part on the custodian's sworn testimony about the records' contents and the custodian's opinion about whether any information in the records is discoverable.

We conclude the defendant showed good cause for discovery of complaints of dishonesty or false reporting as to some officers, but did not show good cause for discovery of complaints of excessive force as to any officers. We further conclude a trial court conducting an in camera review of peace officer personnel records must examine the produced records itself and may not rely on the custodian's assessment of the discoverability of information contained in the records. We, therefore, grant the petition

2

in part and direct the trial court to conduct further proceedings consistent with our decision.

## BACKGROUND

Ronald Jay Sisson, also known as Brian Lee Olsen, is charged with one count of murder (Pen. Code, § 187, subd. (a)) and three counts of assaulting a peace officer with a deadly weapon (Pen. Code, § 245, subd. (c)). The charges stem from an incident in which peace officers attempting to apprehend Sisson at a home in Carlsbad fired multiple shots into Sisson's vehicle, killing his front seat passenger.

*Officers' Version of Events*

According to a report of the incident prepared by the Carlsbad Police Department, Costa Mesa Police Sergeant Scott May; Costa Mesa Police Detectives Eric Wisener, Larry Fettis, Aaron Parsons, Kevin Westman, Bang Le, and George Escanuelos; and state parole agents Eric Kraus and Shad Colbert traveled to Carlsbad on November 1, 2007, in three unmarked vehicles. May, Parsons and Westman were in a Nissan Armada; Escanuelos and Fettis were in a Chevrolet Impala; and Wisener, Le, Colbert, and Kraus were in a Chevrolet Uplander.

The purpose of the officers' trip was to apprehend Sisson, who had absconded from parole. At the time, the officers believed Sisson was an associate of a criminal street gang. They also believed he was wanted by another law enforcement agency on identity theft charges and for possibly kidnapping his infant child from foster care. They considered him to be armed and dangerous.

3

All of the officers wore badges. Four of the officers wore clothing identifying them as peace officers. Parsons wore the Costa Mesa Police Department's gang unit uniform, including "a black polo style shirt with a soft police badge patch sewn on the upper left chest. On the back of the shirt, POLICE GANG UNIT was written in large white lettering." Kraus[1] and Colbert both wore black T-shirts with "POLICE" written in large white letters on the front, back and both sleeves. They also wore soft body armor with "POLICE" written on both the front and back. Le wore a blue, long-sleeve nylon raid jacket with "POLICE" written on the back and both sleeves.

When the officers arrived at Sisson's home, Wisener contacted the Carlsbad Police Department and requested the assistance of two marked police units. While the officers waited for the marked police units, Fettis and Escanuelos, who were watching the home, radioed that Sisson was preparing to leave. May decided to stop Sisson and directed the officers to move in and make contact.

The officers blocked Sisson's vehicle by parking the Uplander and the Armada behind it. Parsons, who had previous contacts with Sisson, and Westman got out of the Armada and approached the driver's side of Sisson's vehicle. Parsons had his gun drawn and his flashlight out. Wisener, who also had previous contacts with Sisson, and Colbert

---

[1] Although Kraus, following the advice of his attorney, declined to be interviewed by Carlsbad Police Department investigators, he submitted a written statement which is included in the Carlsbad Police Department's report.

4

got out of the Uplander and positioned themselves at the rear passenger side of Sisson's vehicle.

Parsons stood next to the driver's side door of Sisson's vehicle and identified himself as a police officer. Parsons commanded Sisson to stop and to put his hands up. Sisson made eye contact with Parsons and initially raised his hands, as if complying with Parsons's commands. However, Sisson then put his hands back on the steering wheel of his vehicle and reversed it. He swerved it toward Parsons and ran over Parsons's foot and lower leg. Parsons yelled several times that he had been hit.

Meanwhile, Sisson repeatedly rammed his vehicle into the Uplander and Armada until he forced his way between them. At the time, Kraus and Le, both of whom had previous contacts with Sisson, were inside the Uplander and May was inside the Armada.

Sisson continued reversing his vehicle in a circular pattern through a neighbor's yard. Fettis was standing next to the driver's door of the Impala, which he had parallel parked west of Sisson's driveway. Sisson looked over his shoulder at Fettis and then drove his vehicle directly toward Fettis. Fettis ran to a safe location just before Sisson rammed the Impala.

After Sisson rammed the Impala, he continued driving his vehicle in reverse at an accelerated speed toward a nearby intersection. When Sisson reached the intersection, he turned his vehicle around and lurched forward as he transitioned from reverse to drive. By then, several of the officers had moved to the middle of the street and Wisener, Fettis, and Kraus fired their weapons at Sisson's vehicle. Wisener fired one shot, Fettis fired 13 shots, and Kraus fired 12 shots.

5

Sisson drove away, eventually crashing his vehicle into a telephone pole and fleeing on foot. Police officers apprehended him approximately an hour after the crash. He had only minor injuries; however, his front seat passenger was taken to a hospital for treatment and died two days after the incident from a gunshot wound to the head.

Parsons also received treatment at a hospital. He had a sprained ankle and there were tire marks on his right leg below the knee.[2]

*Sisson's Motions and Version of Events*

Sisson filed two motions under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), Evidence Code section 1043, and Penal Code section 832.5. One motion sought discovery of certain documents from the Costa Mesa officers' personnel files, including any complaints of excessive force, dishonesty, and fabrication of charges or evidence. The other motion sought discovery of the same types of documents from the state parole agents' personnel files.

Sisson supported his motions with declarations from his attorney disputing the officers' version of events in several key respects. As to all of the officers, the declarations stated Sisson had no history of violence and had never been accused of possessing a deadly or dangerous weapon. The officers knew from a radio transmission by Fettis there was a passenger in Sisson's vehicle. Sisson was already backing out of the

---

[2] A Carlsbad police field evidence technician took digital images of all the officers after the incident. He also took digital images of Parsons's injuries and collected Parsons's pants and shoes.

driveway when the officers drove up in their vehicles and their vehicles collided with his. Although it was nighttime, the officers did not have their vehicles' headlights turned on. In addition, the officers wore civilian clothing and did not identify themselves as police officers. Sisson believed he was under attack and attempted to escape. The officers fired 27 rounds at his vehicle. All of the rounds hit the passenger side of the vehicle.

As to specific officers, the declarations stated that during the police investigation and, in some instances, during the preliminary hearing:[3]

1. Parsons and Wisener lied about identifying themselves as police officers when they approached Sisson's vehicle as Sisson and unspecified witnesses stated the officers did not identify themselves.

2. Parsons lied about not knowing whether there was a passenger in Sisson's vehicle and Wisener similarly lied about not seeing a passenger in Sisson's vehicle.

3. Parsons changed his story about how he was holding his flashlight as he approached Sisson's vehicle because he wanted to cover up his knowledge there was a passenger in Sisson's vehicle and bolster his claim Sisson knew he was a police officer.

---

[3] Parsons, Wisener, Fettis, and Kraus testified at the preliminary hearing. Sisson included a copy of the preliminary hearing transcript in the record he provided for this petition. When Sisson's counsel referenced the transcript at the hearing on the Sisson's *Pitchess* motions, the trial court stated it did not consider preliminary hearing transcripts in *Pitchess* proceedings. Although Sisson's counsel did not agree with the trial court's position, Sisson's petition does not challenge this aspect of the trial court's ruling and it does not affect our decision. We, therefore, do not address it. Nonetheless, we are not aware of any authority categorically excluding consideration of a preliminary hearing transcript or other documentary evidence in *Pitchess* proceedings. (See *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1025 (*Warwick*) [in addition to defense counsel's affidavit, a trial court hearing a *Pitchess* motion may have before it "a police report, witness statements, *or other pertinent documents*"] italics added.)

7

4. Parsons lied about being run over by Sisson's vehicle because he did not sustain any injury during the incident.

5. Wisener lied about Sisson driving his vehicle toward other officers, repeatedly smashing his vehicle into an unmarked police car, and crashing into a neighbor's garage. Sisson never drove his vehicles toward officers and instead simply tried to exit the area. The physical evidence supports Sisson's position, including the fact that all of the bullet holes are in the side of Sisson's vehicle. None of them are in the front of it. In addition, the shooting officers admitted they spoke with one another after the incident and before their interviews with Carlsbad investigators, giving them ample opportunity to create a collusive story.

6. Fettis lied about not telling other officers there was a passenger in Sisson's vehicle. Kraus stated in his report of the incident he heard Fettis announce this information over the radio.

7. Fettis lied about Sisson driving his vehicle directly toward him. Sisson never drove toward Fettis. Unspecified physical evidence and unspecified witness accounts show Fettis's claim was fabricated. In addition, the shooting officers admitted they spoke with one another after the incident and before their interviews with Carlsbad investigators, giving them ample opportunity to create a collusive story.

8. Le was evasive in his account of events and lied about seeing little to none of the incident likely because he did not want to contradict his fellow officers.

9.     Escanuelos, Westman, May, and Colbert lied about hearing officers identify themselves as police officers to Sisson.  Sisson and unspecified witnesses stated the officers did not identify themselves.

10.     Westman and Escanuelos lied about believing Sisson was targeting officers. Unspecified physical evidence shows Sisson never deliberately targeted the officers.

11.      May failed to tell investigators he admonished officers for firing their weapons without having a clear shot.

12.     Kraus lied about shooting at Sisson as Sisson was driving toward him. Sisson's account, unspecified witnesses' accounts, and unspecified physical evidence show this claim was fabricated.  Carlsbad investigators also informed Kraus the placement of the shell casings at the scene did not match his version of events.  In addition, the shooting officers admitted they spoke with one another after the incident and before their interviews with Carlsbad investigators, giving them ample opportunity to create a collusive story.

The trial court granted Sisson's *Pitchess* motions in part.  The trial court found Sisson had shown good cause for an in camera review of the personnel files of Kraus, Wisener, Fettis, and Parsons for complaints related to dishonesty and false reporting.  The trial court correspondingly found Sisson had not shown good cause for an in camera review of the other officers' personnel files for such complaints.  It also found Sisson had not shown good cause for an in camera review of any of the officers' personnel files for excessive force.

After conducting the in camera review, the trial court found discoverable information as to two of the officers.  The trial court provided the information to defense counsel subject to a protective order.  Sisson then filed this petition seeking review of the trial court's decision.

## DISCUSSION

### I

*Applicable Legal Principles*

The legal principles guiding our review of *Pitchess* motions are well-established. "A defendant has a limited right to discovery of a peace officer's confidential personnel records if those files contain information that is potentially relevant to the defense. [Citations.] . . . [¶] To initiate discovery, a defendant must file a motion seeking such records, containing affidavits 'showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation. . . .' [Citation.]  Good cause requires the defendant to establish a logical link between a proposed defense and the pending charge and to articulate how the discovery would support such a defense or how it would impeach the officer's version of events. [Citation.]

"The threshold for establishing good cause is 'relatively low.' [Citations]  The proposed defense must have a 'plausible factual foundation' supported by the defendant's counsel's declaration and other documents supporting the motion.  [Citation.]  A plausible scenario 'is one that might or could have occurred.'  [Citation]  The 'defendant must also show how the information sought could lead to or be evidence potentially admissible at

10

trial. . . . Once that burden is met, the defendant has shown materiality under [Evidence Code] section 1043.' [Citation]

" 'If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.] Subject to certain statutory exceptions and limitations [citation] "the trial court should then disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.' " [Citations.]" [Citation.]

"We review the denial of a *Pitchess* motion for abuse of discretion." (*People v. Moreno* (2011) 192 Cal.App.4th 692, 700-702.) "A trial court abuses its discretion when its ruling 'fall[s] "outside the bounds of reason." ' [Citation.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 714; accord, *People v. Galan* (2009) 178 Cal.App.4th 6, 12.)

II

A

*Discovery of Dishonesty/False Reporting Complaints as to*

*May, Escanuelos, Westman, Colbert and Le.*

Sisson contends the trial court abused its discretion by denying his motions for information related to complaints of dishonesty or false reporting as to May, Escanuelos, Westman, Colbert, and Le. We agree Sisson showed good cause for discovery of such information as to May, Escanuelos, Westman and Colbert, but not as to Le.

11

As summarized above, the declarations supporting Sisson's motions stated May, Escanuelos, Westman, and Colbert lied about hearing officers identify themselves as police officers to Sisson. According to Sisson and unspecified witnesses, the officers did not identify themselves. Sisson, therefore, believed he was under attack and attempted to escape.

Whether Sisson knew the men who approached his vehicle were police officers potentially bears on whether he intentionally assaulted the officers and whether he acted provocatively for purposes of the provocative act murder doctrine. Sisson's supporting declaration provides a specific factual scenario of officer misconduct (the officers deliberately lied about what transpired to cover up one another's transgressions) with a plausible factual foundation (they were not wearing uniforms, they were not in marked vehicles, and they did not identify themselves) for a lack of knowledge/lack of intent defense. There is a logical link between the information sought and this defense because Sisson may be able to use information related to past acts of dishonesty or false reporting by these officers to impeach the officers' credibility and cast reasonable doubt on their version of events. Thus, Sisson has met the relatively low requirements for the trial court to conduct an in camera review of the officers' personnel records for such information and the trial court abused its discretion by denying Sisson's motion as to these officers and this type of information. (*Warrick*, *supra*, 35 Cal.4th at pp. 1024-1026; *Garcia v. Superior Court* (2007) 42 Cal.4th 63, 72; *Giovanni B. v. Superior Court* (2007) 152 Cal.App.4th 312, 319.)

12

Conversely, as to Officer Le, we conclude Sisson has not met the good cause requirement. One of Sisson's supporting declarations states Le was evasive in his account of events, but the declaration does not elaborate on this point. Likewise, the declaration states Le lied about seeing little to none of the incident, but the declaration does not provide a specific factual scenario with a plausible factual foundation to support this statement. Accordingly, we conclude the trial court did not abuse its discretion by denying Sisson's motion for discovery of past complaints of dishonesty and false reporting against Le.

B

*Discovery of Excessive Force Complaints as to Fettis, Kraus, and Wisener*

Sisson contends the trial court erred by denying his motion for discovery of information in the personnel files of Fettis, Kraus, and Wisener related to excessive force complaints. As previously discussed, to establish good cause for discovery of this information, Sisson must demonstrate a logical link between the information and a proposed defense to a pending charge. (*Warrick*, *supra*, 35 Cal.4th at p. 1021.) As the trial court implicitly determined, Sisson has not met this requirement.[4]

---

[4]  We requested supplemental briefing on this point. The district attorney's office responded to our request. Although the district attorney's office generally lacks standing to be heard on *Pitchess* motions (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1043-1046), we considered the response as an amicus curiae brief on behalf of real parties in interest Department of Corrections and Rehabilitation and Costa Mesa Police Department. (See, e.g., *Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1315, fn. 2.)

13

## 1

*Murder Charge*

At the hearing on the *Pitchess* motions, Sisson argued past complaints of excessive force were material because the officers' use of excessive force in firing at his vehicle was an absolute defense to the murder charge. Sisson is mistaken.

The prosecution is seeking to hold Sisson liable for his passenger's death under the provocative act murder doctrine. "The provocative act murder doctrine has traditionally been invoked in cases in which the perpetrator of the underlying crime instigates a gun battle, either by firing first or by otherwise engaging in severe, life-threatening, and usually gun-wielding conduct, and the police, or a victim of the underlying crime, responds with privileged lethal force by shooting back and killing the perpetrator's accomplice or an innocent bystander." (*People v. Cervantes* (2001) 26 Cal.4th 860, 867.)

"[A] provocative act murder has both a physical and a mental element that the prosecution must establish. [Citation.] To constitute the actus reus of provocative act murder, the defendant must commit an act that provokes a third party to fire a fatal shot. The mens rea element is satisfied if the defendant knows that his or her provocative act has a high probability—not merely a foreseeable possibility—of eliciting a life-threatening response from the person who actually fires the fatal bullet. [Citations.] Cases often discuss these two elements in terms of whether the defendant committed a *provocative act* which *proximately caused* the killing." (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 582-583; see also CALCRIM No. 560.)

The focus of the provocative act murder doctrine is on the defendant's conduct and not on the state of mind of the party firing the fatal shot. (See *In re Joe R.* (1980) 27 Cal.3d 496, 506, fn. 6; *Pizano v. Superior Court* (1978) 21 Cal.3d 128, 137-139) Consequently, liability for provocative act murder is determined by whether the killing was a natural and probable consequence of the defendant's provocative act, not by whether the actual killer's use of force was reasonable. (*People v. Mejia* (2012) 211 Cal.App.4th 586, 631; *People v. Briscoe*, *supra*, 92 Cal.App.4th 568, 592-593 [application of the provocative act murder doctrine does not require the killing result from the reasonable response by the actual shooter]; *People v. Gardner* (1995) 37 Cal.App.4th 473, 480 [same].) Thus, whether the officers in this case used reasonable force in firing at Sisson's vehicle is immaterial to Sisson's defense of the murder charge.

2

*Assault Charges*

In his response to our request for supplemental briefing (see fn. 4, *ante*), Sisson argues for the first time that the reasonableness of the officers' use of force is material to his defense of the assault charges. More particularly, he argues the reasonableness of the officers' use of force is material to whether the officers were lawfully performing their duties at the time of alleged assaults. He bases his argument on his view of the conduct of the officers who stopped and approached his vehicle. However, he has not supplied any supporting authority indicating the officers' actions were, or could reasonably be found to be, unlawful or excessive under the circumstances (e.g., involving the apprehension of a known gang member who had absconded from parole and was

15

believed to be armed and dangerous).  Similarly, to the extent Sisson bases his argument on the conduct of the officers who fired gunshots at his vehicle, he has not supplied any supporting authority indicating actions taken after his alleged assaults can provide a defense to them.  Accordingly, Sisson has failed to establish a logical link between past complaints of excessive force and any defense in this case.

III

*Procedures for In Camera Review*

After partially granting Sisson's *Pitchess* motions, the trial court conducted two in camera hearings:  one to review Kraus's personnel records and one to review the personnel records of Wisener, Fettis, and Parsons.  At each hearing, the trial court placed the custodian under oath and asked the custodian general questions about the contents of the records the custodian produced.  The trial court did not, however, examine any produced record unless the custodian indicated the record included discoverable information.  For instance, although one of the custodians produced records of an internal affairs review of the subject shooting, the trial court did not examine the records and instead relied solely on the custodian's opinion that the records contained no discoverable information.

Because we questioned whether the trial court's in camera review complied with applicable law, we requested and received supplemental briefing from the parties.  After considering the supplemental briefing, we conclude the trial court's in camera review did not comply with applicable law.

16

The California Supreme Court discussed the procedures for *Pitchess* motions at length in *People v. Mooc* (2001) 26 Cal.4th 1216 (*Mooc*). Of pertinence here, the Court explained that when a trial court finds a defendant has shown good cause for discovery of peace officer personnel information, the custodian of records "is obligated to bring to the trial court all 'potentially relevant' documents *to permit the trial court to examine them for itself.*" (*Id.* at pp. 1228-1229, italics added.) A custodian need not produce any documents clearly irrelevant to the defendant's *Pitchess* request; however, if a custodian is uncertain whether a document is relevant, the custodian "should present it to the trial court. Such practice is consistent with the premise of Evidence Code sections 1043 and 1045 that *the locus of decisionmaking is to be the trial court, not the prosecution or the custodian of records.*" (*Ibid.*, italics added.) The custodian must also be prepared to state during the in camera review and for the record what documents or category of documents the custodian did not produce and why. A court reporter should document the custodian's statements and any questions from the trial court regarding the completeness of the record." (*Id.* at p. 1229.)

Before ruling on the *Pitchess* motion, the trial court must make a record of what documents it examined to permit future appellate review. To make the record, the trial court may photocopy the records the custodian produced and place them in a confidential file. Alternatively, the trial court can make a list of or state for the record the documents it examined. (*Mooc*, *supra*, 26 Cal.4th at p. 1229.) After examining the documents and questioning the custodian, the trial court should seal the record of the in camera hearing. (*Id.* at pp. 1229-1230.)

17

In this case, the transcripts of the in camera hearings show the trial court failed to comply with the Supreme Court's guidance in *Mooc* in key respects. Of chief concern, the trial court did not examine all of the potentially responsive documents the custodians produced. Rather, the trial court only examined a document if a custodian affirmatively indicated the document contained discoverable information. The trial court utilized this approach even for documents directly related to the case, such as an internal affairs review of the subject shooting.

While we have no reason to believe the custodians intentionally lied under oath or withheld discoverable documents in this case, we do not read the Supreme Court's guidance in *Mooc* to permit a trial court to abdicate to a custodian its responsibility to examine the produced documents and assess the discoverability of the information contained in them. (See, *Mooc*, *supra*, 26 Cal.4th at pp. 1229-1230, fn. 4 [the statutory scheme codifying *Pitchess* contemplates the trial court will be the entity deciding what information to disclose in response to a defendant's *Pitchess* motion].) To the contrary, it is the trial court's active involvement in the *Pitchess* process that allows the process to work as intended. "[B]oth *Pitchess* and the statutory scheme codifying *Pitchess* require the intervention of a neutral trial judge, who examines the personnel records in camera, away from the eyes of either party, and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitations. In this manner, the Legislature has attempted to protect the defendant's right to a fair trial and the officer's interest in privacy to the fullest extent possible." (*Mooc*, *supra*, 26 Cal.4th at p. 1227.)

18

Moreover, because the trial court did not examine all of the produced documents, the trial court did not make an adequate record of the produced documents should we need to review the matter on appeal. (*Mooc*, *supra*, 26 Cal.4th at p. 1229.) Further, while the trial court made an effort to inquire into what types of documents the custodians opted not to produce, the effort fell short of requiring the custodians to establish on the record what documents or category of documents were included in the officers' complete personnel files and, where applicable, to explain their decisions to withhold certain documents. "Absent this information, the court cannot adequately assess the completeness of the custodian's review of the personnel files, nor can it establish the legitimacy of the custodian's decision to withhold documents contained therein. Such a procedure is necessary to satisfy the Supreme Court's pronouncement that 'the locus of decisionmaking' at a *Pitchess* hearing 'is to be the trial court, not the prosecution or the custodian of records.' [Citation.]" (*People v. Guevara* (2007) 148 Cal.App.4th 62, 69, citing *Mooc*, *supra*, at p. 1229.) Accordingly, we conclude the trial court must conduct a new in camera review of the personnel records of Kraus, Wisener, Fettis, and Parsons.

DISPOSITION

Let a writ of mandate issue directing the superior court to review in camera the personnel records of May, Wisener, Fettis, Parsons, Westman, Escanuelos, Kraus, and Colbert for past relevant complaints of dishonesty and false reporting, and to conduct the reviews consistent with the procedures described in *Mooc*, *supra*, 26 Cal.4th 1216 and this decision.  In all other respects, the petition is denied.  The stay issued November 30, 2012 is vacated.

McCONNELL, P. J.

WE CONCUR:

McDONALD, J.

AARON, J.

20