Filed 10/27/14  P. v. Compton CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DOUGLAS COMPTON,<br><br>    Defendant and Appellant. | B250332<br><br>(Los Angeles County<br>Super. Ct. No. BA372410) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert J. Perry, Judge.  Affirmed.

Peter Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Douglas Compton was convicted of a double homicide and, as a third strike offender, sentenced to 95 years to life plus 17 years in prison. He raises three challenges to his convictions. None provides a basis for reversal, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Two men (who were brothers) were gunned down on a sidewalk in Los Angeles, California. The shooter went by the gang moniker "Country."

The People charged defendant with the first degree murder (Pen. Code, § 187, subd. (a))[1] of each brother, with being a felon in possession of a firearm (§ 12021), and with various firearm enhancements. A jury convicted defendant of the second degree murder of one brother; the manslaughter of the other; and the use of a firearm.

## DISCUSSION

## I.      Motion for Personnel Records (*Pitchess*[2] Motion)

Months after the shootings, two detectives (Detectives Leonardo McKenzie and Tommy Thompson) interviewed potential witness James Green. Two months later, a third detective (Detective Daniel Gersna) interviewed potential witness Eric Nelson. Each interview was recorded; during those interviews, Green and Nelson each identified defendant as Country and as involved in the shootings. However, when Green and Nelson were later called as witnesses at defendant's preliminary hearing, each recanted his prior statements. Specifically, each testified that (1) he was not the person speaking on the recording; and (2) he was the person on the recording, but the detectives had threatened him to implicate defendant in the moments before the recording devices were turned on.

Defendant thereafter filed a motion asking the trial court to conduct an in camera review of the three detectives' personnel records for, among other things, prior incidents of witness coercion. (This is referred to as a *Pitchess* motion, after the 1974 decision first articulating this procedure.) Defense counsel's affidavit in support of the motion did not

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

[2]      *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

proffer any reason why the detectives would try to frame defendant. The trial court denied the motion without conducting an in camera hearing after finding defendant's showing "insufficient" in light of the inconsistencies in the witnesses' preliminary hearing testimony.

Our role in assessing the trial court's ruling is limited; how we might have decided the motion is irrelevant. We may only ask whether the trial court abused its discretion by making a ruling "'"'"outside the bounds of reason.'"'"'" (*Sisson v. Superior Court* (2013) 216 Cal.App.4th 24, 34 (*Sisson*).)

The personnel records of peace officers, including citizens' complaints made against them, are privileged. (§§ 832.7, 832.5, 832.8.) This privilege yields to a criminal defendant's right to present a defense. (*Brant v. Superior Court* (2003) 108 Cal.App.4th 100, 106.) In recognition of this right, a court will conduct an in camera review of an officer's records for information that could support a defense, but only if the defendant establishes "good cause" for discovery. (Evid. Code, § 1043, subds. (a), (b)(3).) "Good cause" turns in part upon whether the information the defendant seeks is "material." (*Id.*, § 1043, subd. (b)(3).) A defendant establishes "materiality" by setting forth (1) a "'specific factual scenario of officer misconduct [in his case] that is plausible'" (*Uybungco v. Superior Court* (2008) 163 Cal.App.4th 1043, 1048-1049 (*Uybungco*)); and (2) "a logical link between the information [he seeks] and a proposed defense to a pending charge" (*Sisson*, *supra*, 216 Cal.App.4th at p. 36). This "good cause" threshold is a "relatively low" one (*Garcia v. Superior Court* (2007) 42 Cal.4th 63, 70, 72), but it is not meaningless.

There is a logical link in this case between the information defendant sought in his *Pitchess* motion and his proffered defense. (Accord, *People v. Memro* (1985) 38 Cal.3d 658, 681-684 [defendant alleging officers coerced a confession; defense may be entitled to *in camera* review of those officers' personnel records for prior instances of similar misconduct], overruled on other grounds in *People v. Gaines* (2009) 46 Cal.4th 172.) The question here is accordingly whether the specific factual scenario defendant offered

3

up was "'plausible . . . in light of the pertinent documents'" in this case. (*Uybungco, supra*, 163 Cal.App.4th at pp. 1048-1049.)

To be plausible, a scenario need not be persuasive, reasonably probable, or credible. (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316-1319 (*Thompson*); *People v. Sanderson* (2010) 181 Cal.App.4th 1334, 1340-1341.) But courts can reject a scenario as implausible if it is (1) incomplete (*Thompson*, *supra*, 141 Cal.App.4th at pp. 1316-1317 [defendant did not explain why he was in a drug-infested area; incomplete]; *City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1147 [defendant alleging mishandling of evidence did not explain which evidence was mishandled, or how; incomplete]); (2) internally inconsistent (*People v. Galan* (2009) 178 Cal.App.4th 6, 8-9 (*Galan*) [allegations in support of discovery inconsistent with defendant's own prior, unchallenged statements and other unchallenged evidence]); or (3) at odds with common sense (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 991-992 (*Lewis and Oliver*) [defendant alleging police conspiracy to plant drugs on him and make up a story that he was involved in a drug transaction; not plausible]; *Thompson, supra*, 141 Cal.App.4th at pp. 1318-1319 [same]).

The trial court concluded that defendant's proffered scenario of officer coercion was internally inconsistent with one of the pertinent documents before it—namely, the preliminary hearing transcripts. (*Sisson, supra*, 216 Cal.App.4th at p. 31 & fn.3 [court may consider such transcripts].) This was not an abuse of discretion because Green's and Nelson's preliminary hearing testimony that they were not on the recordings is irreconcilable with defendant's scenario that they *were* on the recordings making coerced statements. (Accord, *Galan*, *supra*, 178 Cal.App.4th at pp. 8-9.) To be sure, defendant's scenario is consistent with some portions of Green's and Nelson's preliminary hearing testimony, where they (inconsistently) state they *were* on the recordings. But the trial court's reliance on the inconsistencies that did exist was not outside the bounds of reason.

Alternatively, defendant alleged that the three detectives independently conducted two interviews of different people at different times, but used exactly the same coercive technique (namely, making threats before turning on a recording device) to frame

4

defendant without any proffered reason for doing so. A court does not abuse its discretion rejecting such "grandiose conspiracies" as implausible. (*Lewis and Oliver, supra*, 39 Cal.4th at pp. 991-992; *Thompson, supra*, 141 Cal.App.4th at pp. 1317-1318.) Although the trial court did not rely on this additional rationale, we may. (*People v. Chism* (2014) 58 Cal.4th 1266, 1295 & fn.12 ["'[W]e review the [trial court's] ruling, not [its] reasoning.'"].)

## II.    Monikers in Rap Sheets

Defendant also sought to introduce his criminal history report (or rap sheet) because it contained the monikers defendant had admitted to using; Country was not among them. The court excluded the rap sheet.

A criminal defendant's rap sheet is admissible to prove that he served a particular prior prison sentence. (*People v. Martinez* (2000) 22 Cal.4th 106, 111-112 (*Martinez*); *People v. Dunlap* (1993) 18 Cal.App.4th 1468, 1471-1472 (*Dunlap*).) In this situation, the rap sheet qualifies as an "official record" excepted from the hearsay rule's usual bar on out-of-court statements. (Evid. Code, §§ 1200, 1280.) The official records exception applies to writings "made as a record of an act, condition, or event" that are (1) made within the scope of a public employee's duty, (2) at or near the time of the act, condition, or event, and (3) prepared in a manner that renders the record trustworthy (and trustworthiness will be presumed). (Evid. Code, §§ 1280 [exception], 664 [presumption that official duty is performed]; *Dunlap*, *supra*, 18 Cal.App.4th at p. 1477.)

Defendant argues that the monikers that persons report to police, and which police must then include in rap sheets (§ 13125), should be treated the same as other facts on a rap sheet (such as the service of a prison sentence). We disagree. By its plain terms, the official records exception applies to writings "made as a record of an act, condition, or event . . . when offered . . . to prove the act, condition, or event." (Evid. Code, § 1280.) A moniker—unlike an arrest, conviction, or service of a prison sentence—is not an "act, condition, or event." Even if it were, the exception would allow at most a defendant to "prove the act, condition, or event" (namely, that the defendant provided certain monikers), *not* that he actually used those monikers. Unlike the verifiable information at

5

issue in *Martinez* and *Dunlap*, a defendant's self-report of his nicknames is an unverified statement that no public employee could (or is under any duty to) verify. It constitutes an additional layer of hearsay that, absent a pertinent exception, is inadmissible. (E.g., *People v. Edwards* (1991) 54 Cal.3d 787, 821 ["'A defendant in a criminal case may not introduce hearsay evidence for the purpose of testifying while avoiding cross-examination.'"].)

The trial court did not abuse its discretion in excluding the rap sheets for defendant's proffered purpose. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) We reject defendant's related due process argument for the same reasons.

## III. Self-representation

On the day set for the bench trial regarding defendant's prior convictions, for the hearing on his new trial motion, and for sentencing, defendant announced he wanted to "do [his] own retrial." The trial court construed his request as one to represent himself at the bench trial and on the new trial motion. The court denied the request as untimely and, in conjunction with defendant's request to represent himself in another pending case, as an attempt to "jack[] around the system." The court then denied the new trial motion, accepted defendant's admission to the prior convictions, and imposed sentence.

A criminal defendant has a federal constitutional right to represent himself at trial once he knowingly and intelligently waives the right to counsel. (*Faretta v. California* (1975) 422 U.S. 806, 834-835; *People v. Doolin* (2009) 45 Cal.4th 390, 453 (*Doolin*).) Defendant contends that the trial court violated this right.

What defendant meant by his request "to do [his] own retrial" is unclear. To the extent defendant sought to represent himself only as to the new trial motion but not the prior convictions trial or sentencing (as he contends on appeal), his request is equivocal and was properly denied on that basis. (See *Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1002 [request is equivocal "where the defendant tries to manipulate the proceedings by switching between requests for counsel and for self-representation"]; *Doolin*, *supra*, 45 Cal.4th at p. 453 [equivocal requests may be denied].)

6

To the extent defendant sought to represent himself for all further proceedings (as the trial court understood), his request was untimely. A trial on prior convictions and a new trial motion are considered part of the overall trial. (*Doolin*, *supra*, 45 Cal.4th at p. 454; *People v. Rivers* (1993) 20 Cal.App.4th 1040, 1048 (*Rivers*); cf. *People v. Miller* (2007) 153 Cal.App.4th 1015, 1023-1024 [request made after prior conviction trial and new trial motion, but well in advance of sentencing; timely as to sentencing].) A request for self-representation made after a jury verdict but before these other stages is accordingly not made "a reasonable time before *trial* begins" and is consequently untimely. (*Doolin*, *supra*, 45 Cal.4th at p. 453, italics added; see *Rivers*, *supra*, 20 Cal.App.4th at p. 1048 [applying this rule to bench trials on prior convictions].)

A court has discretion to deny an untimely request. (*Doolin*, *supra*, 45 Cal.App.4th at p. 453.) In exercising this discretion, a court may consider a variety of factors, including the quality of counsel's representation, the defendant's "prior proclivity to substitute counsel," the reasons for the request, the length and stage of the proceedings, and the disruption and delay self-representation might entail. (*People v. Windham* (1977) 19 Cal.3d 121, 128.) Here, the court noted the lateness of the request as well as defendant's proclivity to represent himself in a separate proceeding. Although defendant did not request a continuance in this case, the court could fairly infer such a request would follow a grant of self-representation status and thereby disrupt the three pending proceedings set for that day. Having considered the pertinent factors, the court's ruling was within its discretion.

Further, any error was harmless. Defendant's already filed new trial motion was based on the perceived inconsistency of the jury's verdicts, which is not a basis for reversal. (*People v. Carbajal* (2013) 56 Cal.4th 521, 532.) Moreover, defendant admitted his prior convictions. Defendant offers no argument as to how he would have handled either of these proceedings, or sentencing, differently on his own. (See *Rivers*, *supra*, 20 Cal.App.4th at pp. 1050-1052 [court may look to likely effect of postdenial proceedings in assessing harmlessness].)

7

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


                                        HOFFSTADT, J.

We concur:


BOREN, P.J.


CHAVEZ, J.