Filed 10/30/20  P. v. Lettier CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JACOB DANIEL LETTIER,<br><br>    Defendant and Appellant. | D076358<br><br><br>(Super. Ct. Nos. SCS306243; SCS307891) |

APPEAL from a judgment of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Jacob Daniel Lettier was charged separately for two separate incidents occurring while he was incarcerated in county jail. In connection with the first incident, the prosecution charged him with battery on a peace officer and resisting an executive officer. In the second incident, occurring two months later, he was charged with vandalism of jail property. After the trial court granted the People's request to consolidate the charges in a single case, the jury hung on the battery count but otherwise convicted Lettier as charged.

Lettier argues the court erred in granting consolidation. He also seeks independent review of the materials considered by the trial court during its in camera hearing under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). We reject both claims. Consolidation was statutorily permitted, and the court did not abuse its discretion in weighing the potential prejudice from joinder against efficiency gains of a joint trial. Turning to the *Pitchess* claim, although the trial court did not follow the correct procedure at the in camera hearing, there was no resulting prejudice to *Lettier*. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a medical procedure on December 24, 2018, San Diego County Sheriff's Deputy Jacob Ferem transported Lettier in a wheelchair back to his medical isolation cell at George Bailey Detention Center. Lettier asked why he was being kept in isolation and demanded to speak with Ferem's lieutenant. When they reached the cell door, Lettier held out his arms, preventing Ferem from wheeling him inside. He ignored Ferem's repeated directions to put his arms down and continued demanding to speak to a lieutenant. Ferem grabbed Lettier's wrists and pulled them toward Lettier's chest to force compliance, but Lettier hunched over as if preparing to

hurl Ferem over his shoulder. Conscious of their size differential, Ferem decided to lift Lettier out of his wheelchair onto the ground to secure him.

On the ground, Lettier thrashed and screamed while continuing to ignore Ferem's instructions. At some point he managed to grab Ferem's wrists. Worried that the much larger Lettier would gain control, Ferem struck him multiple times with his elbow and knee. He reached for his radio to call for help, but Lettier yanked out the wire. Another deputy heard the commotion, saw a scuffle on the monitors, and ran over to help secure Lettier in handcuffs.[1] The incident left Ferem with an injured knee that took about a month to heal.

In early February 2019, the San Diego County District Attorney filed an information charging Lettier in case No. SCS306243 (hereafter SCS306243) with battery on a peace officer causing injury (Pen. Code,[2] § 243, subd. (c)(2)) and resisting an executive officer (§ 69). Lettier filed a *Pitchess* motion seeking discoverable information from Ferem's personnel file, arguing that the police reports were erroneous and Ferem had used excessive force. Following an in camera hearing with the Sheriff's Department's custodian of records testifying under oath, the court found no responsive documents to disclose.

On February 26, Lettier was alone in a holding cell at George Bailey Detention Center following a court appearance. After over an hour of being detained, he slipped his arms out from the waist chains and slammed the chains against the holding cell window, cracking it. This conduct prompted

---

[1]    The recording system malfunctioned, leaving no video of the altercation for jurors to view.

[2]    Except where otherwise specified, all further statutory references are to the Penal Code.

3

the district attorney to charge him in case No. SCS307981 (hereafter SCS307981) with vandalism of jail property. (§ 4600.)

The People moved to consolidate the charges, and the trial court granted the request. An amended consolidated information was filed under SCS306243 charging Lettier with battery of a peace officer causing injury (§ 243, subd. (c)(2), count 1) and resisting an executive officer (§ 69, count 2) in connection with the December 2018 incident, as well as with damaging jail property (§ 4600, count 3) thereafter.[3] The court designated SCS306243 as the lead case and granted the People's request to dismiss SCS307981.

The consolidated action proceeded to a jury trial, where the prosecution examined deputies involved in both incidents. Deputy Ferem described the December 2018 scuffle, but with no video to support his account, the jury was left with a credibility contest between Ferem's account and Lettier, who testified in his defense. Lettier claimed Ferem taunted him, accusing him of faking an injury, and proceeded to assault him as he struggled to stand up from his wheelchair. As to the holding cell incident two months later, the jury had the benefit of video footage. Lettier explained that he threw up his arms in "a moment of exasperation" after hours of being detained and left unattended, and in the process accidentally hit the window.

The jury failed to reach a verdict on the battery charge, and the court declared a mistrial on count 1. On counts 2 and 3, the jury convicted Lettier as charged. At sentencing, the court imposed a county jail term of 24 months, consisting of a 16-month lower term on count 2 and a consecutive 8-month term (one-third the 2-year middle-term) on count 3.

---

3      The amended consolidated information alleged that Lettier destroyed jail property on February 26, 2018. This was a typographical error; the original information in SCS307981 alleged that the offense took place on February 26, 201*9*, and this fact was undisputed at trial.

4

DISCUSSION

Lettier argues consolidation was improper and deprived him of a fair trial. He also seeks independent review of the in camera *Pitchess* proceeding. We address these contentions in turn, concluding consolidation was proper and finding no prejudicial error from the trial court's *Pitchess* review.

1.    *Consolidation*

    a.    *Additional Background*

In June 2019, the People moved to consolidate the charges in SCS306243 and SCS307891 pursuant to section 954. Claiming the two custodial incidents were "connected together in their commission," the People noted that both occurred at the George Bailey Detention Center, with Lettier using violence and destroying jail property. Moreover, they argued Lettier could not establish prejudice from joinder because neither incident was inflammatory nor supported by only weak evidence. Lettier opposed consolidation, arguing the counts were "neither of the same class nor . . . transactionally related," and suggesting consolidation would permit the prosecution to backdoor impermissible propensity evidence.

The trial court granted consolidation. Although it agreed with Lettier that there was likely no cross-admissible evidence, the remaining factors under *Alcala v. Superior Court* (2008) 43 Cal.4th 1205 (*Alcala*) showed that there would be no prejudice if the charges were consolidated. Consolidation would neither "influence or inflame the jury against the defense" nor join a weak case with a strong one, and no capital offenses had been charged.

    b.    *Consolidation was statutorily permitted.*

Section 954 provides, in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses

5

of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." Pursuant to this statute, offenses may be joined if they are either "connected together in their commission" or "of the same class." (§ 954; *People v. Soper* (2009) 45 Cal.4th 759, 771 (*Soper*).) Two offenses that occurred at different times and places and against different victims are nevertheless connected in their commission where a common element of substantial importance links them. (*Alcala, supra,* 43 Cal.4th at p. 1218; *People v. Anderson* (2018) 5 Cal.5th 372, 388 (*Anderson*).) This might happen, for example, where offenses share a common intent or motivation. (*Alcala*, at p. 1219 [common intent "to brutally kill young females"]; *Anderson,* at p. 388 [crimes " 'all involved the intent to illegally obtain property' "].) In addition, offenses are properly joined as " 'of the same class' " if they " 'possess common characteristics or attributes.' " (*People v. Landry* (2016) 2 Cal.5th 52, 76 (*Landry*) [four offenses occurring in the custodial context and involving a prison-made weapon were "of the same class"].)

We independently review the legal question of whether two or more offenses may be joined as being "connected in their commission" or "of the same class." (*People v. Alvarez* (1995) 14 Cal.4th 155, 188.) Because it promotes efficiency, the law favors joinder of charges. (*Alcala, supra,* 43 Cal.4th at p. 1220; accord, *People v. Westerfield* (2019) 6 Cal.5th 632, 689.)

The People argue, and we agree, that Lettier's charges were connected in their commission. The two incidents occurred in the custodial context while Lettier was detained at the same facility, and they both involved the use of physical force under similar circumstances. Lettier dismisses the locational similarities, claiming that the fact he was in custody was a

6

circumstance beyond his control.  However, his *actions* in each incident appear to reflect an extreme frustration with confinement and isolation.

Turning to the preliminary hearing transcripts that were before the court at the time of its consolidation ruling, Ferem testified that Lettier had been objecting to his placement in a medical isolation cell and stuck out his arms to prevent Ferem from wheeling him inside.  Likewise, a deputy sheriff testifying at the preliminary hearing in the vandalism case described footage of Lettier throwing his waist chains multiple times against the holding cell window.  His actions in both instances—breaking a cell window and forcibly blocking entry into a cell—reflect a common motivation of forcibly protesting the circumstances of his confinement.  The offenses were thus linked by common elements of *substantial* importance, supporting consolidation.  (See *Alcala, supra,* 43 Cal.4th at p. 1219; *Anderson, supra,* 5 Cal.5th at p. 388.)[4]

Lettier's reliance on *People v. Renier* (1957) 148 Cal.App.2d 516 is misplaced.  Defendant Renier burglarized a home, stealing a pistol.  Later that night, he used the pistol to commit an armed robbery.  Afterward, he stole a car and went for a joyride.  The People charged him in one case with the burglary, and in another with robbery and a vehicle code violation.  Over

---

[4]    This common motivation was explored at length during trial.  Consistent with his testimony at the preliminary hearing, Ferem testified that Lettier complained about being in isolation and stuck out his arms to prevent being wheeled into the cell.  Taking the stand, Lettier admitted hitting the holding cell window in "a moment of exasperation," upset that he had been held for hours and ignored when he called out for help.  He characterized his time in custody as "the closest thing I have ever come to experiencing hell" and reported feeling dismay, betrayal, sadness, and desperation throughout.  Drawing on this theme, the prosecutor remarked during his closing argument that Lettier "thinks everyone is out to get him, and that impacts how he views his situation," but "[b]eing frustrated or unhappy is not a defense to any of the crimes charged."

defense objection, the court consolidated the charges.  The appellate court concluded consolidation was improper because the record revealed "no connection between the offense of robbery and the offense of driving an automobile of another without permission, nor can they be said to arise out of the same transaction." (*Id*. at p. 520.)  Although the pistol was found in the stolen vehicle, that was an insufficient link where there was no evidence it was *used* in the vehicle theft.  (*Ibid*.)  Here, by contrast, both events demonstrated Lettier's extreme frustration with confinement and willingness to resort to physical force to resist or escape it.  This consistent motivation reflects a common element of substantial importance.

      c.     *There was no abuse of discretion in ordering consolidation.*

Although a trial court is authorized to consolidate separate accusatory pleadings where appropriate, "it is not required to do so." (*People v. Merriman* (2014) 60 Cal.4th 1, 37 (*Merriman*).)  "In exercising its discretion in this regard, the court weighs 'the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial.' " (*Ibid*.)  We review a ruling consolidating charges over a defense objection based on facts then known, and do not disturb the court's ruling unless it abused its broad discretion and the defendant makes a *clear* showing of prejudice.  (*Ibid*.)  As we explain, no abuse occurred here.

In evaluating the potential prejudice from consolidation, courts consider the four factors set forth in *Alcala, supra,* 43 Cal.4th 1205:  " '(1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the

8

charges converts the matter into a capital case." (*Id.* at pp. 1220−1221.)  We agree with the trial court's assessment that although the incidents did not present cross-admissible evidence, the remaining factors indicate minimal prejudice from consolidation.[5]

First, none of the charges were particularly inflammatory.  Vandalism, resisting a peace officer, and battery causing injury to a peace officer all involve similarly inflammatory conduct.  Factually, all three charges rest on alleged outbursts by Lettier in a custodial setting.  Although "evidence of two violent crimes might lead a jury to infer that a defendant is violent," that possibility "does not establish that any of the charges were unusually likely to inflame the jury." (*Landry, supra,* 2 Cal.5th at p. 78.)

Second, both cases were strong—Ferem's testimony established the critical elements of both offenses arising from the December 2018 scuffle, and video evidence depicted Lettier's February 2019 vandalism in the holding cell.  Thus, neither case "was a weak case that needed joinder to bolster the likelihood of conviction." (*Simon, supra,* 1 Cal.5th at p. 127.)  Lettier argues that the presence of video evidence in the vandalism case would naturally spillover to the other charges, as to which the People had no video.  But "it always is possible to point to individual aspects of one case and argue that one is stronger than the other.  A mere imbalance in the evidence, however,

---

[5]    As the People suggest, although the existence of cross-admissible evidence is often sufficient on its own to dispel prejudice from joinder or consolidation, "even the complete absence of cross-admissibility does not, by itself, demonstrate prejudice." (*Alcala, supra,* 43 Cal.4th at p. 1221.)  In its absence, we simply consider the remaining factors to assess whether the trial court abused its discretion. (*Landry, supra,* 2 Cal.5th at p. 78; *People v. Simon* (2016) 1 Cal.5th 98, 123−124 (*Simon*).)  As the trial court found, the last *Alcala* factor is not applicable here, as none of the charges involves a capital offense.  We therefore focus our attention on the strength of the evidence and risks of inflaming the jury.

will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges." (*Soper, supra,* 45 Cal.4th at p. 781.) The "salient point" in weighing relative strength "is that the proffered evidence was sufficiently strong in both cases." (*Ibid.*; see *Landry, supra,* 2 Cal.5th at p. 79 [no prejudice where none of the counts were "supported by evidence that was so measurably stronger . . . that it would likely have had an improper spillover effect"]; *People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1437 (*Ybarra)* [no prejudice where "the strength of the evidence as to each incident was relatively balanced"].)[6]

Consequently, the court acted well within its discretion in consolidating the charges in SCS306243 and SCS307891.

d.     *Lettier received a fair trial*.

Even if consolidation was not an abuse of discretion, "we must further inquire whether events *after* the court's ruling demonstrate that joinder actually resulted in 'gross unfairness' amounting to a denial of defendant's constitutional right to a fair trial or due process of law." (*Merriman, supra,* 60 Cal.4th at p. 46.) A judgment will be reversed on this ground "only if it is 'reasonably probable that the jury was influenced [by the consolidation] in its verdict of guilt.' " (*Id.* at p. 49.)

Defendants have a " 'high burden' " to establish gross unfairness from joinder (*Ybarra, supra,* 245 Cal.App.4th at p. 1438), and Lettier has not met

---

6     This case is easily distinguished from those cited by Lettier that found prejudice from joining inflammatory counts with relatively weaker or less inflammatory counts. (See *People v. Earle* (2009) 172 Cal.App.4th 372, 401 [spillover effect from indecent exposure evidence was likely to inflame the jury against defendant in connection with weaker sexual assault charge]; *Coleman v. Superior Court* (1981) 116 Cal.App.3d 129, 138 [joinder of child sexual assault crimes with weaker murder charge involving an adult "has a very serious prejudicial effect upon a jury"].)

it here. Although he states in a conclusory fashion that consolidation deprived him of his right to a fair trial, he does not explain how it conceivably affected the jury's verdicts. Nor could he. The evidence supporting each of the charges was straightforward and strong. Lettier did not dispute that he scuffled with Ferem or cracked the cell window; he merely framed those events differently on the stand.[7] Significantly, the jury hung on the battery charge, indicating it "was capable of, and did, differentiate among defendant's crimes." (*People v. Jones* (2013) 57 Cal.4th 899, 927; accord *Simon, supra,* 1 Cal.5th at p. 130; see e.g., *People v. Saldana* (1965) 233 Cal.App.2d 24, 31 [any error in joining rape and unrelated marijuana possession charges was harmless where the jury acquitted the defendant of marijuana possession].)

2.      *Pitchess*

Lettier filed a motion seeking *Pitchess* discovery bearing on Deputy Ferem's past use of force and overall credibility. The trial court found good cause for an in camera hearing but concluded no disclosure was required. Lettier seeks independent review of the *Pitchess* materials and ruling; the People support his request. We independently evaluate the sealed *Pitchess* record to determine whether the trial court abused its discretion. (*Sisson v. Superior Court* (2013) 216 Cal.App.4th 24, 35 (*Sisson*).) To facilitate that process, we directed the superior court to transmit a supplemental clerk's transcript of the documents reviewed by the trial court at the in camera hearing, as well as a supplemental reporter's transcript of that hearing.

As we explain, the trial court should have asked for clarification about one particular document described by the custodian of records during the in

---

[7]      Based on the jury's request for a readback of testimony given by Lettier, Ferem, and the later-arriving deputy, it seems likely that it ultimately hung on the battery charge because it could not reach agreement as to whether Ferem used reasonable force.

camera hearing.  Although the custodian indicated the document had no potential relevance, the way he described that document should have prompted further inquiry.  Nevertheless, any lapse by the trial court was not prejudicial, as independent consideration of that document reveals nothing remotely relevant to Lettier's discovery requests.

    a.    *Legal Principles*

*Pitchess, supra,* 11 Cal.3d 531 created a mechanism for criminal defendants to discover relevant evidence contained in confidential law enforcement personnel records.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225−1226 (*Mooc*).)  As now codified in Evidence Code sections 1043 through 1047 and Penal Code sections 832.5, 832.7, and 832.8, a defendant seeking discovery must file a motion supported by an affidavit showing good cause for the disclosure sought.  (*Mooc,* at p. 1226.)  "Good cause for discovery exists when the defendant shows both 'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought."  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016.)  This merely requires a plausible showing that officer misconduct might or could have occurred.  (*Id.* at p. 1026; see *Sisson, supra,* 216 Cal.App.4th at p. 34 [good cause threshold is relatively low].)

    If the defendant establishes good cause, the trial court is required to conduct an in camera hearing, where the custodian of records must bring to court all documents that are *potentially relevant* to his or her motion.  (*Mooc, supra,* 26 Cal.4th at pp. 1226, 1228−1229.)  "Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review."  (*Mooc,* at p. 1229.)  At the in camera hearing, "the court must review the requested records in camera to determine what information, if any, should be disclosed" (*People v. Gaines* (2009) 46 Cal.4th 172, 179

(*Gaines*)), making a record of the documents it examined to facilitate appellate review (*Mooc*, at p. 1229). The court should thereafter disclose any responsive documents to the defendant. (*Gaines,* at p. 179; *Mooc*, at p. 1226.)

As *Mooc* makes clear, "the locus of decisionmaking is to be the trial court, not the prosecution or the custodian of records." (*Mooc, supra,* 26 Cal.4th at p. 1229.) "[I]t is the trial court's active involvement in the *Pitchess* process that allows the process to work as intended." (*Sisson, supra,* 216 Cal.App.4th at p. 39.) Accordingly, "a trial court conducting an in camera review of peace officer personnel records must examine the produced records itself and may not rely on the custodian's assessment of the discoverability of the information contained in the records." (*Id.* at pp. 28−29.) Not only should it "examine all of the potentially responsive documents the custodian[] produce[s]," it must also "inquire into what types of documents the custodians opted *not* to produce," to adequately assess the completeness of the custodian's review and the legitimacy of his or her decision to withhold documents. (*Id.* at pp. 38–39, citing *People v. Guevara* (2007) 148 Cal.App.4th 62, 69 (*Guevera*).)

b.    *Analysis*

Lettier filed a *Pitchess* motion in March 2019, seeking information from Deputy Ferem's personnel file regarding complaints of excessive force, false statements in reports, or other evidence of dishonesty. Among other things, Lettier sought any records "that pertain to acts indicating or constituting dishonesty, . . . or any act demonstrating a morally lax character." Supporting declarations by Lettier's counsel indicated that Lettier "disagree[d] with the content of the police report in virtually every respect" and believed Ferem used excessive and illegal force. In counsel's view, Lettier's wheelchair had gotten caught in the cell doorframe and, when he

13

tried to stand, Ferem assaulted him from behind. Lettier did not resist, but was rather defending himself from Ferem's blows.

Based on the defense declarations, the trial court found good cause for an in camera review of Ferem's personnel file for discoverable information pertaining to prior use of excessive force or false statements in reports. During the in camera hearing, a deputy sheriff testified under oath as the department's custodian of records. He described each subfolder in Ferem's personnel file and listed the documents contained within them. The custodian testified that none of the documents in Ferem's file were potentially responsive to Lettier's discovery requests. Although he appears to have brought Ferem's entire personnel file with him to the hearing, the court did not personally review any documents. Returning to the courtroom, the court stated there were no documents, complaints, or allegations responsive to Lettier's discovery requests.

"A law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a *Pitchess* motion, including those describing marital status and identifying family members, employment applications, letters of recommendation, promotion records, and health records." (*Mooc, supra,* 26 Cal.4th at p. 1229.) Having reviewed the sealed transcript, we are satisfied that the documents inventoried by the custodian largely fit that description, or consist of information "so remote as to make disclosure of little or no practical benefit." (Evid. Code, § 1045, subd. (b)(3); see *Mooc,* at p. 1232.) We are concerned, however, with a single document, described by the custodian as a "written order by sergeant to abide by the sick leave use rules" contained within Ferem's "station file." As our court has held in a different context, even a one-time misuse of sick leave could bear on a deputy's honesty. (*Paulino v.*

14

*Civil Service Com.* (1985) 175 Cal.App.3d 962, 972.)  To the extent the "written order" suggested a use of sick leave that bore on Ferem's credibility, it would seem "potentially relevant" to Lettier's discovery requests, contrary to the custodian's assessment.  (*Mooc,* at pp. 1228–1229.)

*Mooc* makes clear that a custodian only needs to bring *potentially* relevant documents to the in camera hearing, and not any documents that are "clearly irrelevant." (*Mooc, supra,* 26 Cal.4th at p. 1229 & fn. 4 [explaining why defendants would not necessarily be better protected by a rule requiring full production].)  Here, the custodian identified no potentially relevant documents in Ferem's file, nor did he express "any doubt whether a particular document [was] relevant" to necessitate court review. (*Mooc,* at p. 1229.)  Nevertheless, once he described the sick leave document in the manner he did, the trial court was obligated to seek further clarification.  By asking additional questions or inspecting the document for itself, the court could determine whether the "written order" concerning sick leave might bear on Ferem's credibility.  (See *Guevara, supra,* 148 Cal.App.4th at p. 69 [a custodian must explain the decision to withhold documents as nonresponsive whenever "it is not readily apparent from the nature of the documents that they are nonresponsive or irrelevant to the discovery request"]; *Sisson, supra* 216 Cal.App.4th at pp. 37–39 [although the custodian testified that the personnel files contained no discoverable information, the court had an obligation to examine the internal affairs review of the charged shooting he described].)  Such clarification by the trial court is in keeping with the rule that it must remain "the locus of decisionmaking." (*Mooc,* at p. 1229.)

In the interest of judicial economy, and taking a cue from *Mooc*—which found no right to discovery based on an independent review of the officer's personnel file (*Mooc, supra,* 26 Cal.4th at p. 1233)—we requested transmission of the "written order by sergeant to abide by the sick leave use rules" from Ferem's station file. Having received and reviewed the document, we are satisfied that it contains nothing remotely bearing on Deputy Ferem's credibility. Accordingly, the trial court's failure to seek clarification was harmless, as Lettier was not entitled to any discovery. (See, e.g., *Gaines, supra,* 46 Cal.4th at p. 182 [prejudice must be shown even if *Pitchess* discovery was *erroneously* denied].)

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

AARON, J.

16