[No. B209903. Second Dist., Div. Six. Oct. 5, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RAFAEL PEREZ GALAN, Defendant and Appellant.

COUNSEL

Judith Vitek, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Sarah J. Farhat and Catherine Okawa Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—A trial is a search for the truth. Cross-examination and impeachment of witnesses go to the truth-seeking function of the trial. The courts should be ever vigilant to allow both sides access to evidentiary material that will enable them to search for the truth. In an appropriate case, these principles allow a criminal defendant, by way of a *Pitchess* motion, to "fish" in a police officer's personnel records to see if the officer has a penchant to commit some type of misconduct that would aid in the search for truth. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]; Evid. Code, § 1043.) As this case shows, there are limits to these rules.

Where, as here, a defendant's undisputed extrajudicial statements are reasonably consistent with the officer's description of the crime, discovery of any complaint of prior fabrication is foreclosed. Why? Because, notwithstanding defense counsel's declaration to the contrary, his client has impliedly

acknowledged that the officer has been truthful in his report of the circumstances of the crime. Were we to rule otherwise, imaginative defense counsel could ignore his client's extrajudicial statements and defeat the *Pitchess* scheme's purpose "to protect the defendant's right to a fair trial and the officer's interest in privacy [in his personnel records] to the fullest extent possible . . . ." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1227 [114 Cal.Rptr.2d 482, 36 P.3d 21].)

Rafael Perez Galan appeals from the judgment entered following his conviction by a jury of four counts of assault with a deadly weapon (an automobile) (Pen. Code, § 245, subd. (a)(1)), one count of felony driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)), one count of felony driving with a blood-alcohol level of 0.08 percent or more (*id.*, § 23152, subd. (b)), and one count of attempting to elude a pursuing peace officer while driving recklessly (*id.*, § 2800.2, subd. (a)). Appellant admitted one prior prison term (Pen. Code, § 667.5, subd. (b)) and three prior convictions of driving under the influence (Veh. Code, §§ 23550, 23550.5). He was sentenced to prison for eight years four months.

Appellant contends that the trial court abused its discretion in denying his *Pitchess* motion to discover police officers' confidential personnel records. Appellant argues that he "made a sufficient showing of good cause entitling [him] to an in camera review of the records requested." This contention is without merit and we affirm the judgment.

*Facts*

The following statement of facts is based on an arrest report written by Officer Jason Meilleur and a report written by Sergeant Robert Kirk. In ruling on appellant's *Pitchess* motion, the trial court considered both reports.

At approximately 10:20 p.m. on March 25, 2007, Officers Meilleur and Barnes saw appellant driving a pickup truck at 75 miles per hour on a street where the speed limit was 35 miles per hour. The truck was "straddling the dashed line between" two traffic lanes. The officers were in full uniform and were driving marked black-and-white police motorcycles.

Appellant "was forced to stop" because of "heavy traffic." The officers drove their motorcycles behind appellant's truck and activated their "forward facing solid red lights and red and blue strobe lights to initiate a traffic stop." Appellant "failed to pull to the right and yield." He drove away, and a police pursuit ensued.

During the pursuit, appellant "suddenly stopped," shifted into reverse, and "quickly began backing" toward the officers. Meilleur "swerved to the left

and [Barnes] swerved to the right to avoid being struck" by the truck. Appellant then shifted back into drive and drove away. The officers "continued to follow [him] . . . with all emergency lights activated and intermittent chirps of the siren."

Appellant "suddenly stopped again, placed the [truck] in reverse, and began backing" toward the officers. Meilleur was forced "to swerve to the south curb" and Barnes was forced "to swerve to the north curb to avoid being struck by [the truck]." Appellant shifted into drive and "began driving [westbound] . . . actively swerving at [Barnes] causing him to swerve toward the south curb to avoid being struck by [the truck]." Appellant "then drove away at a high rate of speed . . . ." But he "suddenly stopped again," shifted into reverse, "and began actively swerving . . . at [Barnes] again, causing [Barnes] to swerve into the west curb." Appellant's truck missed Barnes by approximately one foot.

During the subsequent pursuit of appellant, he "stopped again and began backing." The officers "were already separated along the east and west sides [of the street] allowing [appellant] to pass in between [them]." Appellant then shifted into drive "and began actively attempting to run [Meilleur] off the road." Meilleur "was forced to drive up the east curb" into a parking lot. Appellant shifted into reverse "and began backing at [Meilleur] forcing [him] to drive out of the parking lot . . . ." Appellant shifted back into drive and drove away.

Appellant eventually stopped at the end of a dead-end street. He exited the truck and fled on foot. The police arrested him and administered two chemical tests of his breath. Both tests showed a blood-alcohol level of 0.16 percent.

Sergeant Kirk interrogated appellant. The interrogation was recorded. Appellant said that he had "decided not to stop to avoid arrest" for driving under the influence of alcohol. He had previously been convicted of driving under the influence and had spent one year in jail. "[Appellant] conceded that during the pursuit, he had stopped his vehicle on two occasions, placed the vehicle in reverse and backed in the officers['] direction. [Appellant] advised that he did not intend to strike the officers with his vehicle, however he concedes to coming within close proximity to both motorcycle officers."

### Discovery Motion and Trial Court's Ruling

Appellant moved to discover records of complaints against Officers Barnes and Meilleur. The records sought included complaints for "fabrication of charges, fabrication of evidence," and "writing of false police reports."

Defense counsel declared that such complaints were material to the pending litigation for the following reasons: "Officers in this case fabricated the arrest report by falsely stating that [appellant] drove his vehicle in such a manner that it caused both of them to take evasive action on their motorcycles while in pursuit of him. While interrogated, defendant expressly denied driving his vehicle in such a manner."

At the pretrial hearing on the *Pitchess* motion, defense counsel alleged that appellant's actions constituted "an evading" of the pursuing police officers but "not an assault on the officers." The court replied, "Doesn't he [appellant] admit in his interview on certain occasions he stopped and put his vehicle in reverse and drove in reverse?" Defense counsel responded: "He also indicated that he was not aiming for the officers. He was not trying to . . . hit them. He was trying to get away from them." "[T]he gist of the *Pitchess* [motion] is my client is alleging that the officers were dishonest in their account of the events, that they were . . . trying to make it more than what it was to beef up . . . the People's side of the case." (Italics added.) The trial court denied the discovery motion because appellant had failed to set forth "a plausible factual scenario" in support of his claim of officer misconduct.

### Discovery of Police Officer Personnel Records

■ "[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. (Evid. Code, § 1043, subd. (b).) Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.] If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 179 [92 Cal.Rptr.3d 627, 205 P.3d 1074].)

■ In *Warrick v. Superior Court* (2005) 35 Cal.4th 1011 [29 Cal.Rptr.3d 2, 112 P.3d 2], our Supreme Court discussed the elements of a good cause showing of materiality. Defense counsel must file a declaration that "describe[s] a factual scenario supporting the claimed officer misconduct. That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Id.*, at pp. 1024–1025.) "[T]he trial court . . . will have before it defense counsel's affidavit, and in

addition a police report, witness statements, or other pertinent documents. The court then determines whether defendant's averments, '[v]iewed in conjunction with the police reports' and any other documents, suffice to 'establish a plausible factual foundation' for the alleged officer misconduct and to 'articulate a valid theory as to how the information sought might be admissible' at trial. [Citation.] . . . What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents. [Citations.]" (*Id.*, at p. 1025.) "[A] plausible scenario of officer misconduct is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.*, at p. 1026.)

### Standard of Review

"A trial court's decision on the discoverability of material in police personnel files is reviewable under an abuse of discretion standard. [Citation.]" (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220–1221 [56 Cal.Rptr.2d 49, 920 P.2d 1254].) "A trial court abuses its discretion when its ruling 'fall[s] "outside the bounds of reason." ' [Citation.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 714 [94 Cal.Rptr.2d 396, 996 P.2d 46].)

### The Trial Court Did Not Abuse Its Discretion

█ The trial court acted within the bounds of reason when it determined that appellant had failed to "present . . . a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents. [Citations.]" (*Warrick v. Superior Court, supra*, 35 Cal.4th at p. 1025.) Appellant never disputed Sergeant Kirk's report of his statements during police interrogation, and those statements corroborated the officers' observations of appellant's driving. Appellant told Sergeant Kirk that he had "attempted to elude the motorcycle officers" because he was afraid that he would be arrested for driving under the influence. Most important, appellant said that on two occasions he had stopped, shifted into reverse, "backed in the officers['] direction," and come "within close proximity to both motorcycle officers."

█ In view of appellant's statements to Sergeant Kirk, he failed to present a "scenario of officer misconduct . . . that might or could have occurred." (*Warrick v. Superior Court, supra*, 35 Cal.4th at p. 1026.) The proposed scenario was implausible because it did not "present[] an assertion of specific police misconduct that is both internally consistent and supports

the defense proposed to the charges." (*Id.*, at p. 1026.) The assertion of police misconduct (i.e., that the officers fabricated their need to take evasive action to avoid being struck by appellant's truck) was not internally consistent because it conflicted with appellant's own description of his driving. Nor did appellant's assertion of police misconduct support his defense that he was merely "trying to get away from" the officers and not trying to strike them with his truck. No reasonable person with this goal in mind would twice stop, shift into reverse, and back his vehicle toward pursuing police officers so that he would come "within close proximity" to them. And no reasonable police officer in such circumstances would refrain from taking evasive action to protect himself from injury. "*Warrick* permits courts to apply common sense in determining what is plausible, and to make determinations based on a reasonable and realistic assessment of the facts and allegations." (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318–1319 [46 Cal.Rptr.3d 884].)

We also observe that defense counsel's supporting declaration inaccurately related the content of appellant's statement to Sergeant Kirk. Defense counsel declared that, "[w]hile interrogated," appellant had "expressly denied driving his vehicle in such a manner" as to cause the officers "to take evasive action on their motorcycles while in pursuit of him." Sergeant Kirk's report does not mention such a denial. According to Sergeant Kirk, the only express denial by appellant was "that he did not intend to strike the officers with his vehicle."

*People v. Hustead* (1999) 74 Cal.App.4th 410 [87 Cal.Rptr.2d 875], relied upon by appellant, is distinguishable. In *Hustead* the defendant was charged with felony evasion of arrest after a high-speed police pursuit of the vehicle he had been driving. The appellate court concluded that the defendant had made a sufficient threshold showing of good cause to justify an in camera inspection of the reporting officer's personnel files "with respect to acts of dishonesty." (*Id.*, at p. 416.) Defense counsel "asserted in his declaration that the officer made material misstatements with respect to his observations, including fabricating [the defendant's] alleged dangerous driving maneuvers. He also stated that [the defendant] asserted that he did not drive in the manner described by the report and that his driving route was different from that found in the report." (*Id.*, at pp. 416–417.) The appellate court reasoned that counsel's "allegations were sufficient to establish a plausible factual foundation for an allegation that the officer made false accusations in his report. It demonstrated that [the defendant's] defense would be that he did not drive in the manner suggested by the police report and therefore the charges against him were not justified." (*Id.*, at p. 417.) Unlike the situation in *Hustead*, Sergeant Kirk's undisputed report of appellant's statements to the police reasonably corroborated the observations of his driving as reported by Officers Barnes and Meilleur.

*Disposition*

The judgment is affirmed.

Gilbert, P. J., and Coffee, J., concurred.

On October 14, 2009, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 21, 2010, S178070.