Filed 12/2/14  P. v. Escobar CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OSCAR ESCOBAR,<br><br>    Defendant and Appellant. | B252220<br>(Consolidated with B252680)<br><br>(Los Angeles County<br>Super. Ct. No. LA071044) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Susan M. Speer, Judge.  Affirmed with directions.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson and Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This consolidated appeal follows convictions after the revocation of appellant Oscar Escobar's (Escobar) probation in one case (B252220) and jury trial in another case (B252680). Escobar argues that (1) the trial court erred in denying his motion for discovery pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) and refusing to conduct an in camera review of documents in the personnel files of two police officers; and (2) an amended abstract of judgment should be issued to reflect the trial court's order striking his prior prison term enhancement.

We conclude that the trial court did not abuse its discretion in refusing to conduct an in camera review of documents. But, we agree with the parties that an amended abstract of judgment must be issued to reflect the trial court's order striking his prior prison term enhancement under Penal Code section 667.5, subdivision (b).[1]

## PROCEDURAL BACKGROUND

I. *California Court of Appeal Case Number B252220*

In May 2012, the Los Angeles County District Attorney filed a felony complaint charging Escobar with a single count of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) in Los Angeles County Superior Court case Number LA071044. The complaint also alleged that Escobar had suffered a prior prison term (§ 667.5, subd. (b)).

After waiving his constitutional right to a jury trial, Escobar pleaded guilty as charged and admitted the special allegation. The trial court suspended imposition of Escobar's sentence and placed him under formal probation for one year under the terms and conditions of Proposition 36. It also credited him with 28 days of presentence custody and ordered him to pay various fines and fees.

Escobar violated his probation by failing to appear on August 6, 2012, September 20, 2012, October 31, 2012, and December 19, 2012. He separately admitted each violation and the trial court revoked and then reinstated his probation and the terms and conditions of Proposition 36 each time.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Escobar later admitted to violating his probation in this case, and the trial court revoked and terminated his probation. It ordered that Escobar serve the low term of 16 months in county jail, but ordered that the sentence run concurrently with his sentence in a subsequent case (discussed *infra*). It also credited Escobar with 488 days of presentence custody and imposed the previously ordered fines and fees.

Escobar timely filed a notice of appeal, which he subsequently limited to matters unrelated to the validity of the plea.

## II. *California Court of Appeal Case Number B252680*

In a single-count information dated February 27, 2013, the Los Angeles County District Attorney charged Escobar in Los Angeles County Superior Court case Number LA073122 with possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). The information also alleged that Escobar had suffered a prior prison term.

Escobar pleaded not guilty and denied the special allegation. He filed a motion for discovery pursuant to *Pitchess*, *supra*, 11 Cal.3d 531, which the city attorney opposed and the trial court denied. Escobar later filed a second *Pitchess* motion, which the city attorney again opposed, and which the trial court also denied.

Trial was by jury. The jury convicted Escobar as charged and he subsequently admitted the special allegation.

The trial court denied probation and sentenced Escobar to the low term of 16 months in county jail, imposed and stayed a one-year enhancement for his prior prison term allegation, and ordered the sentence to run concurrently with any other sentence. It credited Escobar with 533 days of presentence custody and ordered him to pay various fines and fees.

Escobar timely filed a notice of appeal.

## III. *Consolidation of the Appeals*

On February 20, 2014, this court took judicial notice of another case, B249547, relating to a petition for writ of mandate that Escobar had filed on June 24, 2013. In that writ petition, Escobar argued that the trial court's order denying his second *Pitchess* motion was legally incorrect. After all, he did not simply deny the police allegations;

rather, he set forth a scenario of events that established the materiality of the sought-after discovery. In an order filed on July 10, 2013, this court denied Escobar's petition for writ of mandate. (*Escobar v. Superior Court* (July 10, 2013, B249547).)

On April 16, 2014, Escobar's appeals in case Numbers B252220 and B252680 were consolidated.

## FACTUAL BACKGROUND

I. *Prosecution Evidence*

On January 22, 2013, Los Angeles City Police Officers Tony Chang and Michael Beyda were on uniformed patrol in a marked car at Lankershim Boulevard and Sherman Way, a known hangout for narcotics users, probationers, and parolees. Officer Chang saw a man he did not know, and who was later identified as Escobar, at the rear of a taco stand rocking back and forth. Escobar made eye contact with Officer Chang and then discarded three items about a foot from his feet. Officer Chang saw that one of the items was a methamphetamine pipe with a white crystalline substance on it.

After Officer Beyda parked the patrol car and both officers got out, they ordered Escobar to stop so that they could conduct a narcotics investigation. Escobar turned and ran westbound, away from Lankershim Boulevard, on Sherman Way. Officer Beyda ran after him. Although Officer Chang initially ran after Escobar, he soon returned to the police car because it was still running. Officer Beyda chased Escobar on foot while Officer Chang followed in the patrol car. Escobar stopped at a dead end near a business that was closed. Escobar was attempting to climb a fence when Officer Beyda approached, but got down from the fence on his own. It appeared as if Escobar was trying to double back and retrace his steps toward Sherman Way, but had either laid down or tripped and fell.

Escobar was taken into custody, extremely exhausted, breathing heavily, and uncooperative. More officers arrived and Officer Beyda returned to the corner of Lankershim Boulevard and Sherman Way. There, he learned that another officer had recovered the items that Officer Chang saw Escobar discard.

4

Before Officers Chang and Beyda drove Escobar to the North Hollywood station, Officer Beyda searched Escobar to the best of his ability for weapons, despite Escobar's limp body, which he leaned against the trunk of the patrol car. At the station, Escobar remained uncooperative and refused to provide the officers with his name. Officer Beyda saw no injuries on Escobar, but recalled that he was wearing only one shoe.

During the booking process, Officer Beyda searched Escobar again, this time more thoroughly. He recovered a blue plastic baggie containing a white crystalline substance resembling methamphetamine.[2]

Ten or 15 minutes later, Escobar complained of shortness of breath and pain in his ankle. Officers Beyda and Chang requested an ambulance, which transported Escobar to Sherman Oaks Hospital.

II. *Defense Evidence*

The defense did not present any evidence at trial.

## DISCUSSION

*I. The trial court did not err in denying Escobar's* Pitchess *motion*

Escobar argues that because he set forth a plausible factual scenario that satisfied the low threshold showing required under the *Pitchess/Warrick*[3] standard, the trial court abused its discretion in denying his second *Pitchess* motion and failing to conduct an in camera review of the requested documents.

A. Relevant Proceedings

1. *First* Pitchess *Motion*

Prior to trial, Escobar filed a *Pitchess* motion seeking discovery regarding Officers Chang and Beyda. Defense counsel declared that "Officers Chang and Beyda came upon [Escobar] who was sitting in his parked car, eating. Officers pulled [Escobar] out of his

---

**2**      At trial, a criminalist testified that the white substance was 0.10 grams of methamphetamine.

**3**      *Warrick v. Superior Court* (2005) 35 Cal.4th 1011 (*Warrick*).

car without explanation, beat [him], broke his ankle, and falsely accused him of being in possession of drugs."

The city attorney opposed the motion, relying on *Warrick* to argue that Escobar had not set forth the requisite specific factual scenario. Defense counsel responded that Escobar was merely eating in his car when the officers pulled him out, without explanation, and beat him up. While counsel acknowledged that the versions of the events given by Escobar and the police were very inconsistent, Escobar's obligation had been met by his version of what had occurred.

The city attorney responded that Escobar failed to explain why, out of all the people in Los Angeles, the officers selected and allegedly accosted him. Escobar also failed to flush out details about statements he made or his conduct when the officers approached him; he also did not set forth "a specific factual scenario of at least of who, what, when, where, why, and how," as required by *Warrick*.

The trial court denied the *Pitchess* motion because it failed to satisfy the *Warrick* standard, which requires a "plausible specific factual scenario when read in light of all the undisputed facts" as to officer misconduct as to each officer alleged.

2. *Second* Pitchess *Motion*

Escobar later filed a second pretrial *Pitchess* motion, in which defense counsel declared that Escobar was sitting in his parked car at the corner of Sherman Way and Lankershim Boulevard, eating food he had just purchased. When he finished eating, Escobar opened the car door, heard someone yell, "Get out of the car," and saw two unidentified men with their guns drawn. According to defense counsel's declaration, Escobar knew the area was a high crime neighborhood; he got out of the car and ran until he was tackled and beaten to unconsciousness by the officers.

In opposition, the city attorney pointed out a "glaring inconsistency" between defense counsel's first and second declarations. In the first *Pitchess* motion, defense counsel declared that Escobar was pulled from his car and beaten. But, in the second *Pitchess* motion, Escobar got out of the car, ran, and then was beaten after he was caught.

At the hearing, defense counsel argued that all that was required was an assertion of "wrongdoing by the police based on the fact [that Escobar] says that he did not possess the drugs, does not know where the drugs came from, the drugs were planted on him. [¶] Furthermore, the police officers beat him up."

The city attorney reiterated the inconsistency between the scenarios that Escobar provided through defense counsel—either the officers pulled him from his car or he got out of the car on his own and ran. "It's not a matter we can keep coming back and changing the story," and "we're asserting the fact that we have two very, very glaringly inconsistent declarations."

The trial court determined that the motion and counsel's declaration amounted to "merely a denial. [Escobar] doesn't really offer any plausible explanation that's internally consistent with his first declaration." The trial court continued: "The second declaration doesn't address why these officers just picked [Escobar] out in the parking lot eating his taco and proceeded to beat him without any probable cause. He does not explain why drugs are recovered at the location, why drugs are recovered in his pocket at the time." "You can't get over the initial hurdle that you've now created an internal inconsistency with how [Escobar] was removed from the vehicle or got out of the car. So that's now internally inconsistent." Accordingly, the trial court denied the second *Pitchess* motion.

B.  Relevant legal principles and standard of review

"For approximately a quarter-century our trial courts have entertained what have become known as *Pitchess* motions, screening law enforcement personnel files in camera for evidence that may be relevant to a criminal defendant's defense." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225, fn. omitted (*Mooc*)); see *Pitchess*, *supra*, 11 Cal.3d 531.) To balance the defendant's right to discovery of records pertinent to his or her defense with the peace officer's reasonable expectation that his or her personnel records will remain confidential, the Legislature has adopted a statutory scheme requiring a defendant to meet certain prerequisites before his or her request may be considered. (See §§ 832.5, 832.7 & 832.8; Evid. Code, §§ 1043-1047 [statutory scheme governing *Pitchess*

7

motions].)  Specifically, a defendant seeking discovery of a peace officer's confidential personnel record must file a written motion describing the type of records or information sought (Evid. Code, § 1043) and include with the motion an affidavit demonstrating "good cause" for the discovery and the materiality of such evidence relative to the defense.  (*Mooc*, at p. 1226; see also *Warrick*, *supra*, 35 Cal.4th at p. 1019.)  The information must be requested with "sufficient specificity to preclude the possibility of a defendant's simply casting about for any helpful information."  (*Mooc*, at p. 1226.)

Once the trial court concludes the defendant has satisfied these prerequisites, the custodian of records is obligated to bring to court all documents "'potentially relevant'" to the defendant's motion.  (*Mooc*, *supra*, 26 Cal.4th at p. 1226.)  The trial court must then examine the information in chambers, outside the presence of any person except the proper custodian "and any other persons as the person authorized to claim the privilege is willing to have present."  (Evid. Code, §§ 915, subd. (b), 1045, subd. (b); see *Warrick*, *supra*, 35 Cal.4th at p. 1019.)  Subject to certain statutory exceptions and limitations,[4] the trial court must then disclose to the defendant "'such information [that] is relevant to the subject matter involved in the pending  litigation.'"  (*Mooc*, at p. 1226; *Warrick*, at p. 1019.)  As the parties here agree, "[a] trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion."  (*People v. Hughes* (2002) 27 Cal.4th 287, 330; see also *People v. Moreno* (2011) 192 Cal.App.4th 692, 701; *People v. Cruz* (2008) 44 Cal.4th 636, 670.)

Escobar challenges the trial court's denial of his second motion, arguing that he established the necessary good cause to review the records of Officers Chang and Beyda. He argues that he satisfied the "relatively low threshold" for establishing good cause for

---

[4]     The trial court must exclude from discovery:  "(b)(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought.  [¶]  (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.  [¶]  (3) Facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit."  (Evid. Code, § 1045; see also *Mooc*, *supra*, 26 Cal.4th at pp. 1226–1227.)

an in camera review.  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83–84; *Warrick*, *supra*, 35 Cal.4th at p. 1019.)

We disagree.  Looking at all pertinent documents, Escobar did not offer a consistent theory to support his request to review the officers' personnel records.  (*Warrick*, *supra*, 35 Cal.4th at p. 1025.)  Specifically, in the first supporting declaration, defense counsel asserted that Escobar was singled out and pulled out of his car by the police officers.  In his second declaration, defense counsel asserted that Escobar voluntarily opened his car door and got out to throw away some trash and ran when he heard someone order him to "[g]et out of the car."  In ruling on Escobar's second *Pitchess* motion, the trial court exercised its discretion and considered all "'*pertinent documents*,'" including defense counsel's inconsistent affidavits and the police report.  (*Sisson v. Superior Court* (2013) 216 Cal.App.4th 24, 31, fn. 3.)  Because of the glaring inconsistency between defense counsel's declarations, these documents did not establish a plausible factual foundation for the alleged officer misconduct.  (*People v. Galan* (2009) 178 Cal.App.4th 6, 11–12.)

Bolstering our conclusion that the trial court did not abuse its discretion is the fact that the trial court applied "common sense" in determining that Escobar's alleged factual scenario was not plausible, based upon "a reasonable and realistic assessment of the facts and allegations." (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318–1319.)  In denying Escobar's second motion, the trial court noted that Escobar did not "address why these officers just picked this defendant out in the parking lot eating his taco and proceeded to beat him without any probable cause."  Although the trial court acknowledged that Escobar did not need to show motive, it found Escobar's theory of some sort of implicit conspiracy among the police officers, without any factual support, not a "plausible factual scenario."  Given Escobar's inconsistent versions of what allegedly occurred at the time of his arrest, coupled with the absence of any explanation that would support his suggestion of a conspiracy between these two police officers (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992), we conclude that the trial court did not abuse its discretion in denying Escobar's second motion.

*II.  An amended abstract must be issued to reflect the trial court's order striking Escobar's prior prison term enhancement*

Escobar argues that an amended abstract of judgment should be issued, reflecting that his prior prison term was stricken by the trial court.  The People agree.

At sentencing, the trial court imposed and stayed Escobar's prior prison term enhancement within the meaning of section 667.5, subdivision (b).  In a letter dated February 6, 2014, Escobar's counsel requested that the trial court strike the enhancement.  Counsel further indicates that the trial court responded by issuing an amended minute order and order modifying his sentence by striking the prior prison enhancement.  Now, the abstract of judgment must be amended to reflect the trial court's modification and striking of Escobar's state prison prior.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to amend the abstract of judgment to reflect its striking of Escobar's state prison prior.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
        ASHMANN-GERST


We concur:


_____, J.
      CHAVEZ


_____, J.
      HOFFSTADT


10