Filed 10/14/15  In re Joseph M. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JOSEPH M., et al., Persons Coming Under the Juvenile Court Law. | B260753 |
| | (Los Angeles County Super. Ct. No. DK05392) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| T.M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Akemi D. Arakaki, Judge.  Affirmed with directions.

Cameryn Schmidt, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Mother T.M. appeals from the juvenile court's jurisdictional and dispositional orders removing her sons Joseph and Jeremiah and ordering suitable placement. Mother does not challenge the substantive findings made by the court, but contends the orders must be reversed because the Department of Children and Family Services (Department) failed to comply with the notice requirement of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We agree the Department failed to comply with ICWA and remand the matter with directions to the court to ensure the Department's compliance with ICWA's notice requirement. We affirm the orders in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts Giving Rise to the Petition*

Mother has two children: Joseph[1] and Jeremiah. At the time the Department filed the petition in this case, Joseph was 16 years old and Jeremiah was three years old. The boys have different fathers; neither father is currently in contact with mother or the boys.

The Department learned of the family on June 3, 2014, when it received a referral stating that mother had left the two boys alone at a hotel for six hours without any food or money. The referral indicated mother was a prostitute with a long history of drug use, and that the boys were sometimes present when mother was in her hotel room with a customer. When an emergency response case worker arrived at the hotel, the boys were no longer there. The case worker learned that mother dropped the boys off at a restaurant while she went to visit a customer and, after several hours, had not returned. Joseph called a family friend, who picked the boys up from the restaurant and took them to his home. The case worker visited the children at the friend's home and, after interviewing Joseph, immediately removed both boys and placed them in foster care.

---

[1]  Joseph also goes by the name R. He is referred to as Joseph in this opinion.

The Department filed a petition on June 6, 2014, alleging jurisdiction on multiple grounds and seeking to remove the boys from mother. More particularly, the petition alleged that mother previously assaulted Joseph; mother has a history of drug abuse and is a current user of methamphetamine which renders her unable to care for the boys; mother made an inappropriate plan for the boys by leaving them in care of an unrelated male adult and by failing to return at the agreed upon time; and, on prior occasions mother failed to provide the boys with sufficient food leaving them hungry. On the basis of these allegations, the Department asserted jurisdiction under Welfare and Institutions Code section 300, subsections (a), (b), (g) and (j).[2] The court detained both boys and ordered suitable placement.

During the Department's initial investigation, Joseph confirmed that mother was using drugs, particularly methamphetamine, on a regular basis and that mother used almost all the money she earned or borrowed to buy drugs rather than food. In addition, Joseph stated that the family's living situation was unstable because mother did not always have enough money to pay for a hotel room. When they did stay at a hotel, mother used the room to meet customers, during which time Joseph would take Jeremiah out of the room and walk around the block for an hour or more. If they had a suite, the boys would stay in the next room while mother used the bedroom.

Joseph told the assigned case worker he had not been to school during the past year, and that he spent most of his time caring for his younger brother. He expressed frustration over the unstable living situation, his inability to attend school regularly, the burden of caring for his three-year-old brother, and mother's drug use. Joseph told one social worker that he loved and missed mother, but did not want to reunify with her because he wanted to make a better life for himself. However, Joseph later recanted, stating that he had lied about his mother's drug use and prostitution in court and to the Department, and wanted to reunify with her.

---

[2]     All further section references are to the Welfare and Institutions Code.

3

At the adjudication hearing on October 28, 2014, the court found that Joseph's initial description of events was truthful and sustained the Department's petition, finding jurisdiction under section 300, subdivisions (b), (g) and (j). The court left the order for suitable placement in place and ordered the Department to evaluate out-of-state placement with the maternal grandmother. The court also ordered mother to enroll in a full-time drug and alcohol treatment program and submit to weekly random drug testing.

2.    *Facts Relating to ICWA Notice*

At the outset of the proceedings, mother advised the Department that she believed her mother was half Cherokee Indian. Mother later filed her ICWA-020 form, titled "Parental Notification of Indian Status," and checked the box to indicate she "may have Indian ancestry." Mother wrote in the space provided, "Cherokee – MGM." The court subsequently ordered the Department to investigate mother's Indian heritage claim and provide "notice to the tribe, if necessary."

The Department attempted to contact mother regarding her Indian heritage claim, but she failed to return several phone calls from the assigned case worker. However, the Department successfully contacted the maternal grandmother, Mary Anne C. Mary Anne was unable to provide any detailed information about the family's Indian heritage. She told the case worker, " 'I'm not really sure if we have Cherokee heritage; it's all hearsay. I was also told we might be from, what do you call it, Persia, or what do you call it? I think we have a little bit of everything.' " The Department included this information in its jurisdiction/disposition report dated July 25, 2014. There is no indication in the record before us that the Department gave notice of the dependency proceeding to the Bureau of Indian Affairs or any Indian tribe. Further, there is no evidence the Department ever brought this information to the court's attention, or that the court decided whether ICWA notice was required in this case. However, in the court's October 28, 2014 case plan, the court checked the box indicating ICWA does not apply.

4

Mother timely filed a notice of appeal from the jurisdictional and dispositional orders on December 5, 2014.

## CONTENTION

Mother contends the juvenile court's jurisdictional and dispositional orders must be reversed because the Department failed to provide written notice of the dependency proceedings to the Bureau of Indian Affairs and federally registered Cherokee Indian tribes, as required under ICWA.

## DISCUSSION

1.      *Relevant Law*

"Congress enacted ICWA in 1978 to protect Indian children and their tribes from the erosion of tribal ties and cultural heritage and to preserve future Indian generations. [Citations.]  Because ' "the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents" ' [citation], a tribe has the right to intervene in a state court dependency proceeding at any time [citation]."  (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848.)

Under section 224.3, the juvenile courts and the social services departments have an affirmative and continuing duty to inquire whether a dependent child is or may be an Indian child.  (§ 224.3, subd. (a); *In re Christian P.* (2012) 208 Cal.App.4th 437, 451.)  Accordingly, if the juvenile court or the social worker "knows or has reason to know that an Indian child is involved," the social worker must "make further inquiry regarding the possible Indian status of the child . . . by interviewing the parents . . . and extended family members . . . and contacting . . . any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (§ 224.3, subd. (c); see also Cal. Rules of Court, rule 5.481(a)(4).[3])  Section 224.3, subdivision (b), provides in pertinent part:  "The circumstances that may provide reason to know the child is an Indian child include, but are not limited to, the following:  [¶] (1) A person having an interest in the child, including . . . a member of the child's

---

[3]      All further rule references are to the California Rules of Court.

extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe . . . . " (§ 224.3, subd. (b)(1); rule 5.481, subd. (a)(5)(A).) When a juvenile court "knows or has reason to know that an Indian child is involved" in a dependency case, it must ensure the child's tribe receives notice of the proceedings and its right to intervene. (25 U.S.C. § 1912(a); §§ 224.2, subd. (a), § 224.3, subd. (d); rule 5.481, subd. (b); see also *In re Christian P., supra*, 208 Cal.App.4th at p. 451.)

We review de novo whether the information provided by mother in this case triggered ICWA's notice requirement. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254 (*Dwayne P.*).) Failure to give notice under ICWA is subject to harmless error analysis. (*In re Christian P., supra*, 208 Cal.App.4th at p. 452.)

2.      *Mother Provided Sufficient Information to Trigger ICWA's
        Notice Requirement*

Mother contends she provided sufficient information to trigger ICWA's notice requirement. We agree.

"The determination of a child's Indian status is up to the tribe; therefore, the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement. [Citations.]" (*In re Nikki R., supra*, 106 Cal.App.4th at p. 848.) Further, because the right to intervene is meaningless unless the tribe receives notification, ICWA's notice requirements are strictly construed. (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 474-475.)

On her ICWA-020 form, mother checked the box indicating she "may have Indian ancestry" and listed "Cherokee – MGM" in the space provided. This declaration, without more, triggered ICWA's notice requirement. (See, e.g., *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1198 [mother's indication on Parental Notification of Indian Status form the child may be eligible for membership in the "Navajo–Apache" tribes, standing alone, "gave the court reason to know that [the child] *may be* an Indian child"]; *In re J.T.* (2007) 154 Cal.App.4th 986, 993-994 [notice requirement triggered by references to Cherokee and Sioux heritage]; *In re Damian C.* (2009) 178 Cal.App.4th

6

192, 199 [mother's reference on her ICWA-020 form to Pasqua Yaqui heritage sufficient to trigger notice requirement]; *Dwayne P., supra*, 103 Cal.App.4th at p. 257 [parents' statements that the child has "Cherokee Indian heritage" sufficient to trigger notice requirement].)

Contrary to the Department's assertion, Mother's inability to provide more specific information about her family's Indian heritage did not relieve the Department of its notice obligation under ICWA. "ICWA . . . is designed to protect Indian children and tribes notwithstanding the parents' inaction. [Citations.]" (*Dwayne P., supra*, 103 Cal.App.4th at p. 258.) Further, the cases cited by the Department in which the courts held ICWA notice was not required are inapplicable here. For example, in *In re O.K.* (2003) 106 Cal.App.4th 152, both the mother and grandmother of the minor child indicated that the family might have some Indian ancestry. But there, the mother did not identify any specific tribe and the most definite information provided was from the paternal grandmother who stated, " 'I'm not understanding that too well, but the boy—the young man may have Indian in him. I don't know my family history that much, but where were [sic] from it is that section so I don't know about checking that.' " (*Id.* at p. 155.) Here, by contrast, mother affirmatively asserted on her ICWA-020 form that she may have Cherokee Indian heritage; as explained, *ante*, nothing more is required to trigger the tribal notice requirement under ICWA or California law.

*In re Shane G.* (2008) 166 Cal.App.4th 1532, also relied upon by the Department, is inapposite. There, the minor's grandmother stated that the minor's great-great-great-grandmother was a Comanche princess. However, the court concluded no ICWA notice was required, not because the information provided by the family was too vague, but because the Comanche tribe "requires a minimum blood quantum for membership that exclude[d] [the minor]. [fn. omitted]" (*Id.* at p. 1539.)

Further, the Department cites *In re Z.N.* (2009) 181 Cal.App.4th 282, as holding that a parent's statements that the minor's maternal grandmother was Cherokee and the paternal grandmother was part Apache did not trigger ICWA's notice requirement

7

because that information "did not suggest that the [minors] were . . . eligible for membership as children of a member [of an Indian tribe]." (*Id.* at p. 298.) To the extent the opinion may be susceptible to the Department's interpretation, we note that the majority of courts have reached the opposite conclusion, as discussed, *ante*. In any event, the court went on to hold, in the alternative, that any notice error was necessarily harmless because the tribes at issue rejected mother's claim in response to ICWA notice in a companion case involving another of mother's children. (*Id.* p. 298, 301-302.) Thus, the court concluded that halting the dependency proceedings to require the agency to give notice of mother's Indian heritage claim would have been futile. (*Ibid.*) Moreover, we reiterate the well-established rule, recognized by the court in *In re Z.N.*, that the determination of a minor's status as an Indian child is to be made exclusively by the Indian tribes and their decision on that issue is conclusive. (§ 224.3, subd. (e)(1); and see *In re Z.N., supra,* 181 Cal.App.4th at p. 302.) The Department's proper role is to facilitate the tribes' evaluation process by collecting the information the Legislature has deemed significant and passing that information along to the tribes and the Bureau of Indian Affairs. (See *In re I.B.* (2015) 239 Cal.App.4th 367, 376 ["The social worker in a child dependency case is statutorily required to interview the child's parents and extended family members to gather the information required for the ICWA notice. (§ 224.3, subd. (c).)"], fn. omitted.)

Finally, we see no evidence on the record before us that mother ever retracted her claim of Indian heritage, and we do not construe the maternal grandmother's statement that she was unsure whether the family has Cherokee Indian heritage as a retraction or a contradiction of mother's claim. (Cf. *In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1521 [holding ICWA notice unnecessary where parent initially claimed, but then retracted, Indian ancestry claim].)

In sum, mother's claim of possible Cherokee Indian ancestry on her ICWA-020 form triggered the Department's duty to give written notice of the dependency proceedings to the Bureau of Indian Affairs and all federally registered Cherokee Indian tribes.

3. *Harmless Error Analysis*

" 'A notice violation under ICWA is not jurisdictional in the fundamental sense, but instead is subject to a harmless error analysis.  [Citation.]' " (*In re Christian P., supra*, 208 Cal.App.4th at p. 452.)  Here, mother argues that we must reverse the jurisdictional and dispositional orders because, she claims, she might have obtained a more favorable outcome during the proceedings below if the court applied the additional requirements applicable to removal of an Indian child from parental custody. (See § 361, subd. (c)(6) [setting forth additional findings required before removal of an Indian child from parental custody].)  We disagree.  The Department's evidence plainly supported removal of the children from mother's care and custody.  Further, the court rejected the only evidence weighing against removal (Joseph's recantation of his prior statements regarding mother's drug use and prostitution) based solely upon its assessment of witness credibility – a finding we do not disturb.  (See *Kelly v. CB & I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 452 [appellate court will not reassess the credibility of witnesses or reweigh the evidence].)

We conclude, however, that the Department must provide notice of these dependency proceedings to the Bureau of Indian Affairs and all federally registered Cherokee tribes.  Rather than reverse the court's orders, we remand in order to allow the juvenile court to ensure the Department complies with ICWA's notice requirement. (*In re Christian P., supra,* 208 Cal.App.4th at p. 452 ["[T]he proper remedy here is a limited remand to allow [the Department] to comply with ICWA, with directions to the trial court that depend on the outcome of such notice."] )

9

### DISPOSITION

We affirm the jurisdictional and dispositional orders of the juvenile court. The matter is remanded to the court with directions to order the Department to comply with sections 224.2 and 224.3. If, after proper notice, a tribe determines that the children are Indian children, the tribe, a parent or the children may petition the juvenile court to invalidate any orders that violate ICWA.

*NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

LAVIN, J.

WE CONCUR:

ALDRICH, Acting P. J.

JONES, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.