Filed 12/23/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B304097 (Super. Ct. No. YJ39207) (Los Angeles County) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.C., <br><br> Defendant and Appellant. | |

In *People v. Galan* (2009) 178 Cal.App.4th 6 (*Galan*), we upheld the denial of a motion to inspect the confidential personnel file of a police officer. There, and here, there was no "good cause" for discovery. Here, the reason is straightforward and surprisingly simple. It requires only common sense and practical wisdom, both of which were demonstrated by the experienced trial judge, Honorable Fumiko H. Wasserman. This officer's "*Pitchess* jacket" had nothing to do with the search for truth. Appellant was apprehended a short time and distance away from the burglary. He was hiding in a cardboard box. We doubt that the officer has a penchant for fabricating arrests out of

a cardboard box.  As we shall explain, his credibility has nothing to do with appellant's guilt or innocence, or his theory of the case.

M.C. was declared a ward of the court (Welf. & Inst. Code, § 602) and returned to his home on probation after the trial court sustained a petition for first degree burglary with a person present (Pen. Code, §§ 459; 462, subd. (a) and felony vandalism § 594, subd. (a)).  He appeals, contending that the trial court erred in denying his *Brady/Johnson* motion (*Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*); *People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696) for an in camera review and discovery of the arresting officer's confidential personnel file.  We affirm.

*Facts and Procedural History*

On the morning of March 22, 2019, Eldwin Lum was at home and heard the doorbell ring and knocking at his front door.  Lum watched a video surveillance feed of a woman at his front porch.  The woman walked to a black Kia parked two houses way.  Lum called 911 and continued to watch the Kia.  Two men, wearing dark hoodies and pants, got out of the Kia and ran towards Lum's house.  One man wore red shoes and the other man wore blue shoes.

Lum called 911 again when he heard the downstairs sliding glass door break.  There were sounds of male voices, people walking on broken glass, and rummaging through the house.  Lum heard the stairs creak and yelled "get out of my house.  I got a gun."  Running halfway down the stairs, Lum fired his pistol and saw two men, one wearing blue shoes and the other with red shoes flee.  They ran out the broken glass door.  Sheriff's units responded to the 911 call and searched the area.[1]

---

[1] Appellant is lucky he was not shot and killed by the victim.  A rational inference from the record is that appellant was

2

Deputy Sheriff Navarro was directed to set up a command post at a nearby park. Neighbors reported that someone jumped over a backyard fence. Officers found two men in a backyard, hiding in a boat. One of these suspects had a glass breaking device in his pocket.

Deputy Navarro assisted officers in a backyard search a couple of houses away. Appellant was in a neighbor's shed, hiding inside a cardboard box. Appellant and the two men were brought to the street one at a time and appellant identified them from a police car. Lum made the identification based on "their attire and the color of their shoes." At trial, still photos from a neighbor's surveillance video were received into evidence. Lum identified the black Kia and the "two individuals with the shoes." Lum said appellant was one of the burglars on the stairs.

*Brady/Johnson Motion*

Appellant contends the trial court erred in denying his *Brady/Johnson* motion for the in camera inspection and discovery of Deputy Navarro's confidential personnel records. Appellant's supporting declaration stated that the prosecutor told defense counsel that Deputy Navarro's personnel file had "discoverable information" and the deputy was an essential witness. The declaration did not explain the deputy's role in the case, the nature of his expected testimony, or how the deputy's credibility was at issue. Opposing the motion, the Los Angeles County Sheriff's Department argued that appellant had not made a good cause showing for the in camera inspection and disclosure

a member of a residential burglary "crew." This is an extremely dangerous endeavor. Penal Code section 198.5 provides that there is a presumption in favor of a homeowner who shoots an intruder in his or her home.

of the confidential personnel file.  The trial court denied the motion without prejudice.  We review for abuse of discretion. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992.)

*Brady* requires that the prosecution disclose "'evidence favorable to an accused'" (*U.S. v. Bagley* (1985) 473 U.S. 667, 676) that is material either to guilt or to punishment (*Brady*, *supra*, 373 U.S. at p. 87).  "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."  (*Cone* v. *Bell* (2009) 556 U. S. 449, 469-470.)

In *Johnson, supra*, 61 Cal.4th 696, our Supreme Court held that a defendant may file a *Pitchess* motion for the disclosure of *Brady* material in an officer's personnel file.  There the San Francisco Police Department informed the district attorney the personnel records of two officers in a pending case might contain exculpatory information.  The prosecution filed a *Pitchess* motion for the in camera inspection of the officers' personnel files and the *Brady* disclosure of records material to the prosecution and the defense.  The supporting declaration stated the officers' personnel files may contain "'sustained allegations of <u>specific *Brady* misconduct</u>, reflective of dishonesty, bias, or evidence of moral turpitude. . . .'"  It stated the records "'are material to the pending litigation in that they pertain to the credibility of a necessary and material prosecution witness, and could either impeach said witness or lead to evidence exonerating the defendant.'"  (*Id*. at p. 706.)  Our Supreme Court held "[t]he information the police department has provided, together with some explanation of how the officers' credibility might be relevant to the case, would satisfy the threshold showing a defendant

4

must make in order to trigger judicial review of the records under the *Pitchess* procedures." (*Id*. at pp. 705-706.)

Here, unlike *Johnson,* appellant's supporting declaration failed to state how Deputy Navarro's personnel file has *Brady* material relevant to the case. The supporting declaration is pro forma and states the confidential personnel file may have "discoverable information" and "[t]he *Brady* information pertains to the credibility of a necessary and material prosecution witness." That's it. The supporting declaration presents no scenario of officer misconduct. (*Galan, supra*, 178 Cal.App.4th at p. 13.) That is why the trial court denied the motion without prejudice. And that is why we affirm the denial of discovery.

The declaration does not say the personnel files contain "'*sustained allegations* of specific *Brady* misconduct, reflective of dishonesty, bias, or evidence of moral turpitude. . . .'" (*Johnson, supra,* 61 Cal.4th at p. 706, italics added.) There is a world of difference between a citizen complaint about a traffic ticket and "sustained allegations" of officer misconduct reflecting dishonesty or bias. The supporting declaration did not say or explain why the *Brady* material was relevant to Deputy Navarro's credibility. It did not describe Deputy Navarro's role in the case, the nature of his expected testimony, or how the deputy's credibility was linked to some defense or disputed issue.

The *Johnson* court acknowledged that "in some criminal cases the credibility of police officer witnesses might not be at issue and the defense might have no reason to bring a *Pitchess* motion" or have a need for impeachment material within the meaning of *Brady*. (*Johnson*, *supra*, 61 Cal.4th at p. 718.) That is the case here. Deputy Navarro did not write the

5

arrest report, interview appellant, or interview Lum. There was no defense claim that the deputy used excessive force, conducted a search without reasonable cause, mishandled evidence, tried to get appellant to confess, or conducted an unfair field identification. Appellant defended on the theory that Lum's identification was unreliable because it was based solely on the clothing and the red and blue shoes worn by the intruders. It had nothing to do with Deputy Navarro or possible *Brady* material in his personnel records. The defense theory was that appellant never entered the house and Lum made a wild pistol shot that shattered the sliding glass door. All of that occurred before Deputy Navarro responded to the 911 call.

Appellant cites no authority, and we have found none, that a *Brady/Johnson* motion may be used as a fishing expedition to disclose confidential personnel files that have no logical link to the 911 call, the arrest, the charges, a defense, or the impeachment of a witness.

*Disposition*

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.

YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

6

Fumiko H. Wasserman, Judge

Superior Court County of Los Angeles

_____

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.